**DiFrancesco, Bateman, Coley, Yospin,**
**Kunzman, Davis, Lehrer & Flaum, P.C.**
15 Mountain Boulevard
Warren, New Jersey 07059
(908) 757-7800
Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNION SURGERY CENTER, LLC ON ASSIGNMENT OF PETER G.<br><br>      Plaintiff,<br><br>vs.<br><br>QUALCARE, AFFILIATED PHYSICIANS AND EMPLOYERS HEALTH PLAN, ABC BENEFIT PLANS 1-10; AND JOHN/JANE DOES INC./LLC 1-10,<br><br>      Defendants. | Civil Action No. 2:14-cv-03809-KSH-CLW<br><br>**CERTIFICATION OF COUNSEL**<br>**LISA M. FITTIPALDI, ESQ.** |

LISA M. FITTIPALDI, of full age, hereby certifies as follows:

1. I am a Partner at the law firm of DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis, Lehrer & Flaum, P.C. attorneys for Defendant Affiliated Physicians and Employers Health Plan the within matter.

2. I make this certification in support of Defendant, Affiliated Physicians and Employers Health Plan's motion to dismiss Plaintiff's Amended Complaint pursuant to F.R.C.P. 12(b)(6).

3. A true and correct copy of Plaintiff's Amended Complaint is attached hereto as **Exhibit A.**

4. A true and correct copy of <u>McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.</u>, CIV.A. 09-571 SRC, 2011 WL 4455994 (D.N.J. Sept. 23, 2011) is attached hereto as **Exhibit B**.

5. A true and correct copy of <u>MedWell, LLC v. CIGNA Healthcare of New Jersey, Inc.</u>, CIV.A. 13-3998 FSH, 2013 WL 5533311 (D.N.J. Oct. 7, 2013) is attached hereto as **Exhibit C**.

6. A true and correct copy of <u>MHA, LLC v. Aetna Health, Inc.</u>, CIV.A. 12-2984 SRC, 2013 WL 705612 (D.N.J. Feb. 25, 2013) is attached hereto as **Exhibit D**.

7. A true and correct copy of <u>DeMaria v. Horizon Healthcare Servs., Inc.</u>, 2:11-CV-7298 WJM, 2012 WL 5472116 (D.N.J. Nov. 9, 2012) is attached hereto as **Exhibit E**.

I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By:   */s Lisa M. Fittipaldi*
LISA M. FITTIPALDI, ESQ.

Dated: June 24, 2014

# EXHIBIT A

**CALLAGY LAW**
650 From Road, Suite 565
Paramus, NJ 07652
(201) 261-1700
Attorneys for Plaintiff Union Surgery Center, LLC

RECEIVED / FILED
Superior Court of New Jersey

APR - 7 2014

CIVIL CASE MANAGEMENT
UNION COUNTY

| | |
|---|---|
| Union Surgery Center, LLC on assignment of Peter G., : | **SUPERIOR COURT OF NEW JERSEY** **LAW DIVISION: UNION COUNTY** |
| Plaintiff, : | **DOCKET NO.: UNN-L-361-13** |
| : | **CIVIL ACTION** |
| v. : | |
| Qualcare, Affiliated Physicians and Employers Health Plan, ABC Benefit Plans 1-10; and John/Jane Does Inc./LLC 1-10. : | **AMENDED COMPLAINT** |
| Defendants. : | |

COMPUTER

APR - 8 2014

SECTION

Plaintiff Union Surgery Center, LLC on assignment of Peter G., by way of Complaint against Defendants:

## THE PARTIES

1. At all relevant times, Plaintiff Union Surgery Center, LLC ("Plaintiff") was a healthcare provider in the County of Union, State of New Jersey.

   Upon information and belief, Defendant Qualcare ("Defendant" and collectively with ABC Benefit Plans 1-10, and/or John/Jane Does Inc./LLC1-10, "Defendants") is primarily engaged in the business of providing and/or administering health care plans ("Plans") or policies ("Policies") and was present and engaged in significant activities in the State of New Jersey to sustain this Court's exercise of *in personam* jurisdiction.

2. Upon information and belief, Defendant Affiliated Physicians and Employers Health Plan ("Defendant" and collectively with ABC Benefit Plans 1-10, and/or John/Jane

USCT-QLC-MM-001

Does Inc./LLC1-10, "Defendants")  is primarily engaged in the business of providing and/or administering health care plans ("Plans") or policies ("Policies") and was present and engaged in significant activities in the State of New Jersey to sustain this Court's exercise of *in personam* jurisdiction.

3. Upon information and belief, Defendant ABC Benefit Plans 1-10 ("Defendant" and collectively with all Defendants, "Defendants") are benefit health plans that provide or administer health care benefits to its members or beneficiaries within the State of New Jersey and was present and engaged in significant activities in the State of New Jersey to sustain this Court's exercise of *in personam* jurisdiction.

4. Upon information and belief, Defendant John/Jane Does Inc./LLC 1-10  ("Defendant" and collectively with all Defendants, "Defendants") are employers or funds that provide or administer health care benefits to its members within the State of New Jersey and was present and engaged in significant activities in the State of New Jersey to sustain this Court's exercise of *in personam* jurisdiction.

5. ABC Benefit Plans 1-10 and John/Jane Does Inc./LLC 1-10 have been added as Defendants in this matter because their identity is not known at this time, and Plaintiffs are including them in this action through fictitious names.  On information and belief, the unidentified Defendants are involved and/or responsible, and/or represent others who are involved and/or responsible, for the payment of services rendered by Plaintiff in this action.

## ANATOMY OF THE CLAIM

6. This dispute arises from Defendants' refusal to reimburse Plaintiff the remaining

2

USCT-QLC-MM-001

balance for services provided to Defendants' beneficiary or insured, Peter G. Patient ID No. H1199311.

7. On or about 2011-12-09, Plaintiff provided medically reasonable and necessary services to Peter G., a beneficiary or insured of the Defendants.

8. Plaintiff obtained an assignment of benefits from Peter G.. See Exhibit A attached hereto.

9. Plaintiff prepared a Health Insurance Claim Form formally demanding reimbursement in the amount of $15,600.00 for the medically necessary services rendered to Peter G.. See Exhibit B attached hereto.

10. Subsequently, Plaintiff received payment in the amount of $419.71 for the medically reasonable and necessary services provided to Peter G. (Claim No. 0024538953). See Exhibit C attached hereto.

11. Taking into account deductions, copayments and coinsurance, this resulted in an underpayment of $15,180.29.

12. Accordingly, Plaintiff brings this action for recovery of the outstanding balance.

## COUNT ONE

### FAILURE TO MAKE ALL PAYMENTS PURSUANT TO MEMBER'S PLAN

13. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-18 of this Complaint and incorporates same by reference hereto.

14. Plaintiff avers this Count to the extent the Employee Retirement Income Security Act, codified in 29 USCS §1002, et seq. ("ERISA") governs this dispute.

15. Section 502(a)(1), codified at 29 U.S.C. 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a Plan.

3                                   USCT-QLC-MM-001

16. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Peter G..

17. Upon information and belief, Defendants acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

18. Plaintiff is entitled to recover benefits due to Peter G. under any applicable ERISA Plan and Policy.

19. Upon information and belief, Defendants have failed to make payment pursuant to the controlling Plan or Policy.

20. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

    a.    For an Order directing Defendants to pay to Plaintiff $15,180.29;

    b.    For an Order directing Defendants to pay to Plaintiff all benefits Peter G. would be entitled to pursuant the Plan or Policy issued by Defendants;

    c.    For compensatory damages and interest;

    d.    For attorneys fees and costs of suit;

    e.    For such other and further relief as the court may deem just and equitable.

## COUNT TWO

## FAILURE TO PROVIDE ALL NECESSARY DOCUMENTATION

21. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-26 of this Complaint and incorporates same by reference hereto.

22. Plaintiff avers this Count to the extent the Employee Retirement Income Security Act,

USCT-QLC-MM-001

codified in 29 USCS §1002, et seq. ("ERISA") governs this dispute.

23. Section 502(a)(1), codified at 29 U.S.C. 1132(a) provides a cause of action for a beneficiary or participant seeking damages for an administrator's refusal to supply requested information.

24. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Peter G..

25. Plaintiff has requested copies of the member Plan or Policy for Peter G..

26. Plaintiff has also requested documents supporting Defendants' calculation of reimbursement in this case.

27. To date, Plaintiff has not received copies of the requested documents

28. 29 U.S.C. 1132(a)(1)(a) and 1132 (c)(1)(B) impose a statutory penalty on any administrator who fails to comply with a request for information required to be turned over to a beneficiary under ERISA.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

    a.  For an Order directing Defendants to pay to Plaintiff $110.00 per day for each day that Defendants failed to provide Plaintiff with a copy of the member Plan or Policy;

    b.  For compensatory damages and interest;

    c.  For attorneys fees and costs of suit;

    d.  For such other and further relief as the court may deem just and equitable.

5          USCT-QLC-MM-001

## COUNT THREE

### FAILURE TO ESTABLISH/MAINTAIN REASONABLE CLAIMS PROCEDURES

29. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-34 of this Complaint and incorporates same by reference hereto.

30. Plaintiff avers this Count to the extent the Employee Retirement Income Security Act, codified in 29 USCS §1002, et seq. ("ERISA") governs this dispute.

31. 29 C.F.R. 2560.503-1 requires every employee benefit plan establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations.

32. In particular, 29 C.F.R. 2560.503-1 requires that if a claim for benefits is denied in whole or in part, the administrator of every employee benefit plan shall provide written notice of the determination within 90 days after receipt of the claim by the plan.

33. 29 C.F.R. 2560.503-1 further provides that in the event that a claim for benefits is denied, the written notice of the benefit determination must communicate, *inter alia*, **in a manner calculated to be understood by the person claiming benefits:** (1) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

34. 29 C.F.R. 2560.503-1 further provides that every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.

6

USCT-QLC-MM-001

35. In the case at bar, the employee benefit plan from which Plaintiff claimed benefits did not establish and maintain, in its actual operation of the Plan, procedures that ensured that all relevant time limits and appeal procedures were communicated to the person claiming benefits.

36. As a consequence of Defendants' failure to provide, in a manner calculated to be understood by the person claiming benefits, written notice of all relevant time limits and appeals procedures of the Plan in connection with its adverse benefit determination rendered to Plaintiff, the Plan has failed to comply with the Claims Procedures requirements of 29 C.F.R. 2560.503-1.

37. 29 C.F.R. 2560.503-1 further provides that in the event an employee benefit plan fails to establish **or** follow claims procedures that comply with that regulation, the person claiming benefits shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of ERISA on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

    a.    For an Order that Defendant has not established and maintained claims procedures that comply with 29 C.F.R. 2560.503-1, and that as a result Plaintiff is deemed to have exhausted all required administrative remedies;

    b.    For compensatory damages and interest;

    c.    For attorneys fees and costs of suit;

    d.    For such other and further relief as the court may deem just and

USCT-QLC-MM-001

equitable.

## NOTICE TO PRODUCE

Pursuant to R. 4:18-1, Plaintiff hereby demands that each Defendant produce the following documentation within fifty (50) days as prescribed by the Rules of Court. Additionally please be advised that the following requests are ongoing and continuing in nature and each Defendant is therefore required to continuously update its responses thereto as new information or documentation comes into existence.

1.  A true and exact copy of any and all Health Insurance Policy, Summary Plan Description, and/or Plan describing the terms and conditions governing the patients who received services rendered by Plaintiff as described in the Complaint filed in this action.

2.  Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by any Defendant entities to the same or similar healthcare provider as Plaintiff.

3.  Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by the Plan to this healthcare provider and similar healthcare providers for comparable services as an in network service.

4.  Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by the Plan to this healthcare provider and similar healthcare providers for comparable services as an out of network service.

5.  The name, address and contact information of any other party of interest, specifically the Plan Administrator, Claims Administrator, Third-Party

8

USCT-QLC-MM-001

Administrator and /or additional Insurance Companies.

6. The name of the publication, database, documentation, Medicare guidelines etc., of all documents and databases used by Defendant in computing the Usual and Customary Rates.

7. Provide copies of any and all algorithm(s), formula(s), procedure(s) or fee schedule(s) used to derive the customary and reasonable reimbursement rate in this matter.

8. Copies of any and all documentation, including but not limited to manuals, statutes, rules, regulations, books and/or industry standards which refer to, reflect or otherwise relate to the date of service in question or any potential defense to the action in question.

9. If any Defendant intends to produce the testimony of any expert witnesses at Trial, set forth the names and addresses of each such witness, their area of expertise, the subject matter on which they are expected to testify, and a summary of the grounds of each opinion. Attach a true copy of all written reports provided the Defendant by such witnesses.

## TRIAL COUNSEL DESIGNATION

Lauren E. Fradella, Esq., is hereby designated as Trial Counsel in the above matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## R. 4:5-1(b)(2) CERTIFICATION

9                    USCT-QLC-MM-001

Pursuant to R. 4:5-1(b)(2), I hereby certify that the matter in controversy is not the subject of any other action pending in any court, is not the subject of a pending arbitration proceeding and is not the subject of any other contemplated action or arbitration proceeding, except as may be set forth below:

**None.**

I further certify that I know of no non-parties who should be joined in the action pursuant to R. 4:28, or who may be subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts, except as may be set forth below:

**None.**

### CERTIFICATION OF ATTORNEY

I hereby certify that to the best of my knowledge, information and belief, the within matter is not the subject of any other action or proceeding. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

CALLAGY LAW
Attorneys for Plaintiff

By: *Lauren Fradella*
Lauren E. Fradella, Esq.

DATED: April 3, 2014

USCT-QLC-MM-001

# EXHIBIT A

REDACTED

New Jersey Department of Banking and Insurance
**CONSENT TO REPRESENTATION IN APPEALS OF UTILIZATION MANAGEMENT
DETERMINATIONS AND AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS IN UM
APPEALS AND INDEPENDENT ARBITRATION OF CLAIMS**

## APPEALS OF UTILIZATION MANAGEMENT DETERMINATIONS

You have the right to ask your insurer, HMC or other company providing your health benefits (carrier) to change its utilization management (UM) decision if the carrier determines that a service or treatment covered under your health benefits plan is or was not medically necessary. This is called a UM appeal. You also have the right to allow a doctor, hospital or other health care provider to make an appeal for you.

There are three levels of appeal if you are covered under a health benefits plan issued in New Jersey. Stage 1: the carrier reviews your case using a different health care professional from the one who first reviewed your case. Stage 2: the carrier reviews your case using a panel that includes medical professionals trained in cases like yours. Stage 3: your case will be reviewed through the Independent Health Care Appeals Program of the New Jersey Department of Banking and Insurance (DOBI) using an Independent Utilization Review Organization (IURO) that contracts with medical professionals whose practices include cases like yours. The health care provider is required to attempt to send you a letter telling you it intends to file an appeal before filing at each stage.

At Stage 3, the health care provider will share your personal and medical information with DOBI, the IURO, and the IURO's contracted medical professionals. Everyone is required by law to keep your information confidential. DOBI must report data about IURO decisions; no personal information is ever included in these reports.

You have the right to cancel (revoke) your consent at any time. Your financial obligation, IF ANY, does not change because you choose to give consent to representation, or later revoke your consent. Your consent to representation and release of information for appeal of a UM determination will end 24 months after the date you sign the consent.

## INDEPENDENT ARBITRATION OF CLAIMS

Your health care provider has the right to take certain claims to an independent claims arbitration process through the DOBI. To arbitrate the claim, the health care provider may share some of your personal and medical information with the DOBI, the arbitration organization, and the arbitration professional(s). Everyone is required to keep your information confidential. The DOBI reports data about arbitration outcomes, but no personal information will be in the reports. Your consent to the release of information for the arbitration process will end 24 months after the date you sign the consent.

**CONSENT TO REPRESENTATION IN UM APPEALS AND AUTHORIZATION TO RELEASE OF
INFORMATION IN UM APPEALS AND ARBITRATION OF CLAIMS**

I, _____, by marking [✓] (or [ ]) and signing below, agree to.

[✓] representation in an appeal of an adverse UM determination as allowed by N.J.S.A. 26:2S-11, and release of personal health information to DOBI, its contractors for the Independent Health Care Appeals Program, and independent contractors reviewing the appeal. My consent to representation and authorization of release of information expires in 24 months, but I may revoke it whenever.

[✓] release of personal health information to DOBI, its contractors for the Independent Claims Arbitration Program, and any independent contractors that may be required to perform the arbitration process. My authorization of release of information for purposes of this arbitration will expire in 24 months.

Signature: _____     Ins. ID#: H 1199311     Date: 12-9-11

Relationship to Patient: _____     [✓] I am the Patient     [ ] I am the Personal Representative (provide contact information on back)

_____ unable to read and complete this form due to mental or physical incapacity, a personal representative of the patient may complete it.

Health Care Provider: The Patient or his or her Personal Representative MUST receive a copy of both sides/pages of this document AFTER PAGE 1 has been completed, signed and dated.

Patient: _____, _____
DOB: _____
MD: SPIEU

[✓] MALE  [ ] FEMALE
DOB: 06-20-59

USCT-PG-Page 1

# EXHIBIT B



REDACTED

1000 GALLOPING HILL ROAD
UNION NJ   070837989
732 2058250

772   031

272373693   120911   120911

| PATIENT NAME | | PATIENT ADDRESS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G█████ P█████ | | | | | | | | | | | | |

| BIRTHDATE | SEX | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 06291959 | M | | | | | | | | | | |

| P█████ G█████ | | | |
|---|---|---|---|

| REV CD | DESCRIPTION | HCPCS/RATE/HIPPS CODE | SERV DATE | SERV UNITS | TOTAL CHARGES | NON-COVERED CHARGES |
|---|---|---|---|---|---|---|
| 0499 | INJ PARAVERTEBRAL C/T | 64490 | 120911 | 1 | 5200 00 | GROUP 1 |
| 0499 | INJ PARAVERTEBRAL C/T ADD-ON | 64491 | 120911 | 1 | 5200 00 | GROUP 1 |
| 0499 | INJ PARAVERTEBRAL C/T ADD-ON | 64492 | 120911 | 1 | 5200 00 | GROUP 1 |

PLEASE SEE ATTACHED
OP-REPORT

AMBULATORY SURGERY
CENTER FACILITY BILL

| 001 | PAGE 1 OF 1 | CREATION DATE | 010512 | TOTALS | 15600 00 | |
|---|---|---|---|---|---|---|

| PAYER NAME | HEALTH PLAN ID | | | DUE FROM PATIENTS | EST AMOUNT DUE | NPI | 1396643944 |
|---|---|---|---|---|---|---|---|
| QUALCARE | 272373691 | Y | Y | | 15600 00 | | 272373691 |

| INSURED'S NAME | | INS REL | INSURED'S UNIQUE ID | | GROUP NAME | INSURANCE GROUP NO. |
|---|---|---|---|---|---|---|
| G█████, P█████ | | 18 | H1199311 | | | 003004 |

| TREATMENT AUTHORIZATION CODES | | DOCUMENT CONTROL NUMBER | | EMPLOYER NAME |
|---|---|---|---|---|

| 723,1 | 723.8 | | | |
|---|---|---|---|---|

| PRINCIPAL PROCEDURE CODE | DATE | OTHER PROCEDURE CODE | DATE | OTHER PROCEDURE CODE | DATE | ATTENDING NPI | 1013059716 | QUAL | |
|---|---|---|---|---|---|---|---|---|---|
| 64490 | 120911 | 64491 | 120911 | 64492 | 120911 | LAST | SPIEL | FIRST | DOUGLAS |

| REMARKS | QUALCARE | | | | | |
|---|---|---|---|---|---|---|
| | P.O. BOX 219 | | | | | |
| | PISCATAWAY, NJ   08855 | | | | | |

EXHIBIT C

REDACTED

QualCare, Inc.
P. O. Box 219
Piscataway, NJ 08855-0219

Electronic Service Requested:

16733 0.3564 AT 0.371
UNION SURGERY CENTER                    62
1080 GALLOPING HILL ROAD
UNION, NJ 07083-7189

**QUALCARE**
1-888-670-8135
WWW.QUALCAREINC.COM/QCMEWA

Affiliated Physicians and Employers
Health Plan
Group No: 01APHP30217D
Date: 02/20/2012

## Payment Voucher

Page 1 of 1

Provider: UNION SURGERY CENTER   Employee:   Patient: GEORGE   Member No: H1100311
Provider No:   Vendor No:   Pat Acct No: 0772   Claim No: 0024858853

| Service Code | Date of Service | Charged Amount | Provider Discount | Max Fee Excluded | Ineligible | CoPay/ Coins | Deduct Applied | Other Insurance | Amount Paid | Re-marks | Patient Portion | Withhold Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 400 | 12/09/11 | 5,200.00 | 0.00 | 4,990.83 | 0.00 | 0.00 | 209.17 | 0.00 | 0.00 | | 5,200.00 | 0.00 |
| 400 | 12/09/11 | 5,200.00 | 0.00 | 5,095.37 | 0.00 | 0.00 | 104.63 | 0.00 | 0.00 | | 5,200.00 | 0.00 |
| 489 | 12/09/11 | 5,200.00 | 0.00 | 5,094.09 | 0.00 | 0.00 | 105.91 | 0.00 | 0.00 | | 5,200.00 | 0.00 |
| Claim Totals | | 15,600.00 | 0.00 | 15,180.29 | 0.00 | 0.00 | 419.71 | 0.00 | 0.00 | | | |

Net Payment for Claim         0.00
Patient Portion    15,600.00

| | Charged Amount | Provider Discount | Max Fee Excluded | Ineligible | CoPay/ Coins | Deduct Applied | Other Insurance | Amount Paid | Patient Portion | Withhold Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| Totals | 15,600.00 | 0.00 | 15,180.29 | 0.00 | 0.00 | 419.71 | 0.00 | 0.00 | 15,600.00 | 0.00 |

REQUEST FOR REVIEW: All claims have been processed in accordance with the plan provisions and limitations. Should you or an authorized representative like to request a review of the handling of this claim, you must submit a written request within 180 days to the address listed above. Please include with your request any additional information or documentation you feel would be pertinent to the review of this claim. If you have any questions, please feel free to contact our Customer Service Department at the telephone number listed above.

Electronic (EDI) claims submission results in faster claims processing. QualCare NEIC Payer ID is 23342. Avoid processing delays by ensuring that the patient information submitted matches exactly what is on the patient's ID card, including member ID, birth date, and gender.

Reminder: EDI claims submitted without your NPI or with any other legacy provider ID# will be rejected. As always, your TIN is a required data item.



# EXHIBIT B

MedWell, LLC v. CIGNA Healthcare of New Jersey, Inc., Slip Copy (2013)
57 Employee Benefits Cas. 2067

2013 WL 5533311
NOT FOR PUBLICATION
United States District Court,
D. **New Jersey**.

**MEDWELL, LLC**, Plaintiff,
v.
**CIGNA HEALTHCARE** OF **NEW JERSEY**,
INC., Defendant.

Civil Action No. 13–3998 (FSH). | Oct. 7, 2013.

**Attorneys and Law Firms**

Vafa Sarmasti, Sarmasti, PLLC, Fairfield, NJ, for Plaintiff.

Michael Ralph Sarno, McGivney & Kluger, P.C., Florham Park, NJ, for Defendant.

**Opinion**

***OPINION & ORDER***

HOCHBERG, District Judge.

**\*1** This matter comes before the Court upon **MedWell**, **LLC's** motion to remand this matter to state court [Dkt. No. 7]. **MedWell** also requests attorney's fees pursuant to 28 U.S.C. § 1447(c). For the reasons below, the Court will grant **MedWell's** motion to remand and deny its motion for attorney's fees.

**I. BACKGROUND**
On May 21, 2013, **MedWell, LLC** ("**MedWell**" or "Plaintiff") filed a complaint against **CIGNA Healthcare** of **New Jersey**, Inc.[1] ("Defendant") in **New Jersey** Superior Court, Law Division, Special Civil Part, Bergen County, Docket No. DC–012123–13. **MedWell** alleged claims for (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) violations of the **New Jersey Healthcare** Information Networks and Technologies Act ("HINT"), and (4) unjust enrichment. [Dkt. No. 1 at 12–15.] Defendant removed this matter to federal court on June 27, 2013 on the basis of preemption of Plaintiff's state law claims under the Employee Retirement Income Security Act ("ERISA").

Plaintiff is a **healthcare** provider licensed and authorized to provide **healthcare** services in the State of **New Jersey**. Plaintiff provides medical, chiropractic, and physical therapy services to patients. Defendant is a health services company that conducts business in the State of **New Jersey**. Defendant enters into contracts with individuals and groups to provide health service benefits or administrative services.

Plaintiff alleges that it provided services to A.W., one of Defendant's subscribers, from October 2010 through January 2011. Plaintiff also alleges that Defendant has failed to pay for approximately $9,519.00 of the services Plaintiff provided to A.W. in violation of Defendant's agreement with A.W. These actions form the factual basis for Plaintiff's claims listed above.

**II. STANDARD OF REVIEW**
Under the federal removal statute, any civil action brought in state court over which the federal district courts have jurisdiction may be removed by the defendant to federal court. 28 U.S.C. § 1441(a). As such, a state court defendant may remove any civil action founded on a claim or right that arises under federal law. *Id.* However, under the "well-pleaded complaint" rule, "the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Pasack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 398 (3d Cir.2004); *see also Franchise Tax Bd. of Cal. v. Contr. Laborers Vacation Trust for S. Ca.,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("[A] defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law.").

The Supreme Court has identified a narrow class of cases where the well-pleaded complaint rule does not apply. Under the doctrine of "complete preemption," a plaintiff's complaint may be removed to federal court, even when it does not state a federal claim on its face, if it raises claims in an area where federal law completely preempts state law. *Pasack,* 388 F.3d at 399. Where federal law occupies an entire field of regulatory interest, a plaintiff's claims that fall within that field of interest, no matter how they are stated in the complaint, must be recharacterized as stating a federal cause of action. *See Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) ("When a federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if

pleaded in terms of state law, is in reality based on federal law."). ERISA is one such statute that may completely preempt a plaintiff's state law claim. "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B)." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

**\*2** Section 502(a) of ERISA empowers beneficiaries to recover benefits due to them under the terms of their plans, to enforce their rights under the terms of the plans, or to clarify their rights to future benefits under the terms of the plans. 29 U.S.C. § 1132. It also empowers beneficiaries and participants to enjoin any act or practice which violates any provision of Section 502 or the terms of their ERISA plans, or to obtain other appropriate equitable relief. *Id.* Section 502(a) is the exclusive remedy for rights guaranteed under ERISA. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Causes of action that purport to raise only state law claims, but which fall within the scope of the civil enforcement provisions of Section 502, are necessarily federal in character and removable to federal court by virtue of the clearly manifested intent of Congress. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Because the party seeking removal to federal court must establish federal subject-matter jurisdiction by a preponderance of the evidence, Defendant bears the burden of proving that Plaintiff's claim is truly an ERISA claim. *Pascack,* 388 F.3d at 401–02. In addition, "[t]he removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand ." *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990) (internal quotation marks omitted).

### III. DISCUSSION
Plaintiff makes two arguments in support of remanding this matter to state Court. First, Plaintiff argues that it does not have standing to sue under ERISA. Second, Plaintiff argues that the "savings clause" of ERISA applies to its claims. Because the standing issue is dispositive, the Court does not reaching the "savings clause" issue. The Court also addresses attorney's fees below.

*a. Standing*

Plaintiff argues that it does not have standing to sue under ERISA, and as a result, its state law claims are not completely preempted by ERISA. In response, Defendant argues that Plaintiffs would have standing to sue under ERISA because Plaintiff purported to receive an assignment of rights from the relevant plan participant, A.W., and, therefore, ERISA completely preempts Plaintiff's state law claims.

"Section 502(a) of ERISA allows 'a participant or beneficiary' to bring a civil action, *inter alia,* 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' By its terms, standing under the statute is limited to participants and beneficiaries." *Pascack,* 388 F.3d at 400 (internal citations omitted) (finding that a hospital did not have standing under ERISA therefore its state law claims were not completely preempted by ERISA).

Although the Third Circuit has not squarely addressed the question of standing to sue under ERISA § 502(a) by assignment (*see Pascack,* 388 F.3d at 400 n. 7 (declining to reach the issue but noting that almost every other circuit to face the question has ruled that a health care provider can assert a claim under § 502(a) when a beneficiary or participant has assigned to the provider the individual's benefits under the plan)), courts in this district have found that providers may assert an ERISA claim where a beneficiary or participant has assigned their rights to benefits under the plan to the provider. *See, e.g., Franco v. Connecticut Gen. Life Ins. Co.,* 818 F.Supp.2d 792, 807 (D.N.J.2011) (collecting cases). The resolution of this issue turns on the existence and scope of any assignment to Plaintiff from A.W.

**\*3** Plaintiff filed its complaint against Defendant on May 21, 2013. [Dkt. No. 1 at 11.] Plaintiff alleged, *inter alia,* that "A.W. has assigned their rights to the benefits and payments (if any) to the Plaintiff, related to the services which the Defendant is obligated to pay."[2] [Dkt. No. 1 at 12.] Plaintiff also alleged that "A.W. has further assigned his rights and benefits for the payment of services (if any) to the Plaintiff."[3] [Dkt. No. 1 at 13.]

In its notice of removal, Defendant stated that "[a]ccording to the Complaint, A.W. purportedly assigned his/her rights to the Plaintiff—thereby supposedly conferring the status as a participant/beneficiary in an ERISA-regulated employee benefit plan to it, along with derivative standing under § 502(a) of ERISA—for the Plaintiff to prosecute rights under the qualifying plan." [Dkt. No. 1 at 5.] In its Answer, Defendant asserted as its Thirty–Second Affirmative Defense that "[t]he Plaintiff

MedWell, LLC v. CIGNA Healthcare of New Jersey, Inc., Slip Copy (2013)

57 Employee Benefits Cas. 2067

lacks standing to sue and bring its Complaint against the Defendant here because, *inter alia*, its Assignment of Benefits is invalid, incomplete and/or otherwise insufficient." [Dkt. No. 6 at 9.]

Defendant has not provided any assignment, has couched all descriptions of assignments to carefully avoid admitting that such an assignment actually exists, and has pleaded the affirmative defense of lack of standing. (*See, e.g.,* Opp. Br. at 18 n. 2.) In order to avoid remand for lack of standing to sue under ERISA, Defendant relies primarily on two cases that state the allegations in a plaintiff's complaint are to be taken as true and can establish standing in analyzing a motion to remand. *See Sportscare of Am., P.C. v. Multiplan, Inc.,* Civ. No. 10–4414, 2011 WL 223724 (D.N.J. Jan. 24, 2011) report and recommendation adopted, Civ. No. 10–4414, 2011 WL 500195 (D.N.J. Feb. 10, 2011); *Premier Health Ctr., P.C. v. UnitedHealth Grp.,* Civ. No. 11–425, 2012 WL 1135608 (D.N.J. Apr. 4, 2012).

In *Sportscare,* the Plaintiff alleged that "[a]t all times mentioned herein the plaintiff was out-of-network and did not have a contract with any of the defendants therefore *entitling the plaintiff to be paid for services rendered to individual insureds through the use of assignment of benefits documents* or through patient reimbursement." *Sportscare,* 2011 WL 223724, at *3 (emphasis in original). The *Sportscare* Court found that this language, taken as true, bestowed standing to sue under ERISA on the plaintiff. *Id.,* at *3–*4.

Similarly, in *Premier Health,* the court found that the following language in the plaintiff's complaint constituted a valid assignment, if taken as true:

> The standard "Assignment of Benefits Form" that Premier Health has its patients sign states:
>
> I hereby instruct and direct [United or Health Net] Insurance Company to pay by check made out and mailed out to: Premier Health Center, P.C., 385 Prospect Ave., 1Fl., Hackensack, NJ 07601, Or
>
> *4 If my current policy prohibits direct payment to doctor, I hereby also instruct and direct you to make out the check to me and mail it as follows: [to same address] For the professional or expense benefits allowable, and otherwise payable to me under my current insurance policy as payment toward the total charges for the professional services rendered. THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY. This payment will not exceed my indebtedness to the above-mentioned assignee, and I have agreed to pay, in

a current manner, any balance of said professional service charges over and above this insurance payment.

*Premier Health,* 2012 WL 1135608, at *6–*7.

The assignments, as alleged, in *Premier Health* and *Sportscare* differ significantly from the purported assignment described in Plaintiff's Complaint. In both *Premier Health* and *Sportscare,* the plaintiffs alleged that there was a direct assignment of benefits that supported the cause of action. *See supra.* In contrast, the allegations in Plaintiff's Complaint state "A.W. has assigned their rights to the benefits and payments (if any) to the Plaintiff, related to the services which the Defendant is obligated to pay," and "A.W. has further assigned his rights and benefits for the payment of services (if any) to the Plaintiff." [Dkt. No. 1 at 12–13.] At best, these vague statements merely allege that A.W. conveyed a right to reimbursement from Defendant.[4] Defendant's affirmative defense of lack of standing, and its denial of these allegations further weigh in favor of finding that Defendant cannot meet its burden of establishing preemption. *See N. Jersey Ctr. for Surgery,* 2008 WL 4371754, at *3–*4 (noting that Defendant's defense of no valid assignment militated against finding standing when Defendant also pointed to Plaintiff's Complaint to justify removal and emphasizing Defendant's burden to justify removal). In addition, Plaintiff's assertion that there is a genuine issue as to lack of standing, if correct, would necessitate remand for lack of standing under ERISA.

Defendant bears the burden of proving that Plaintiff's claim is truly an ERISA claim. *Pascak,* 388 F.3d at 401–02. After reviewing the purported assignment language in the Complaint, reviewing Defendant's Answer, and considering the fact that Defendant bears the burden of proving jurisdiction, the Court finds that the Defendant is taking the position there is no valid assignment such that Plaintiff would have no derivative standing to assert ERISA claims.[5] In essence, Defendant's affirmative defense of no valid assignment would deprive this Court of jurisdiction.[6] It is Defendant's burden to establish jurisdiction, and it has not shown that Plaintiff would have standing to sue under ERISA. Therefore, Defendant has not shown that Plaintiff's claims are completely preempted by ERISA. Plaintiff's motion to remand is granted.

### b. Attorney's Fees

*5 In addition to moving to remand to state court, Plaintiff requests attorney's fees under 28 U.S.C. 1447(c). The above discussion shows that Defendant's removal to federal court was not objectively unreasonable. The

MedWell, LLC v. CIGNA Healthcare of New Jersey, Inc., Slip Copy (2013)

57 Employee Benefits Cas. 2067

Court, in exercising its discretion, declines to award attorney's fees in this instance.

**DENIED;** and it is further

**ORDERED** that this matter is **CLOSED.**

**IT IS SO ORDERED.**

**IV. CONCLUSION & ORDER**
For the reasons stated above;

**IT IS** on this 7th day of October 2013,

**ORDERED** that Plaintiff's Motion to Remand [Dkt. No. 7] is **GRANTED;** and it is further

**ORDERED** that Plaintiff's request for attorney's fees is

**Parallel Citations**

57 Employee Benefits Cas. 2067

Footnotes

[1]   Although pled as "**CIGNA Healthcare** of **New Jersey,** Inc.," Defendant's proper name is Connecticut General Life Insurance Company.

[2]   In response to this allegation, Defendant's Answer states: "Defendant has insufficient information to form a belief as to the truth or falsity of the allegations contained in this Paragraph of the Complaint and, therefore, denies the same." [Dkt. No. 6 at 2.]

[3]   In response to this allegation, Defendant's Answer states: "Defendant has insufficient information to form a belief as to the truth or falsity of the allegations contained in this Paragraph of the Complaint and, therefore, denies the same." [Dkt. No. 6 at 2.]

[4]   This district is split on whether the assignment of the receipt of payments versus the assignment of all benefits is necessary to confer derivative standing. Some cases have found that more than the mere receipt of payment is necessary to confer standing. *See, e.g., MHA, LLC v. Aetna Health, Inc.,* Civ. No. 12–2984, 2013 WL 705612, at *3 (D.N.J. Feb. 25, 2013) (noting any purported assignment must "encompass the patient's legal claim to benefits under the plan"); *Demaria v. Horizon Healthcare Servs., Inc.,* Civ. No. 11–7298, 2012 WL 5472116, at *4 (D.N.J. Nov.9, 2012) (noting that the scope of the assignment is critical to determining standing); *Franco,* 818 F.Supp.2d at 808 ("the assignment must encompass the patient's legal claim to benefits under the plan"); *North Jersey Ctr. for Surgery v. Horizon BCBS of New Jersey Inc.,* Civ. No. 07–4812, 2008 WL 4371754, at *8 (D.N.J. Sept. 18, 2008) (vague references to a purported assignment failed to establish that there was a complete assignment of health insurance benefits versus a mere right of reimbursement); *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health and Benefits Plan,* Civ. No. 05–5941, 2007 WL 2793372, at *3 (D.N.J. Sept.25, 2007) (no ERISA jurisdiction where applicable assignment's language allowed for the receipt of payments but did not support an unequivocal assignment of all of the patient's rights under the plan); *Cf. Cmty. Med. Ctr. V. Local 464A UFCW Welfare Reimbursement Fund,* 143 F. App'x. 433, 435 (3d Cir.2005) (observing in dicta that a court could not be satisfied that a provider has standing to pursue a claim under ERISA § 502(a) as an assignee without knowing the term or parameters of the purported assignments). Other cases have found that the right to recover payment is enough to confer standing. *See, e.g., Edwards v. Horizon Blue Cross Blue Shield of N.J.,* Civ. No. 08–6160, 2012 U.S. Dist. LEXIS 105266 (D.N.J. June 4, 2012) ("Accordingly, the assignment of the right to reimbursement here confers derivative standing under ERISA."); *Premier Health Ctr., P.C. v. UnitedHealth Grp.,* Civ. No. 11–425, 2012 WL 1135608, at *8 (D.N.J. Apr. 4, 2012) ("[the right of reimbursement] must logically include the ability to seek judicial enforcement of that right"); *N. Jersey Brain & Spine Ctr. v. Connecticut Gen. Life Ins. Co.,* Civ. No. 10–4260, 2011 WL 4737067, at *5–*6 (D.N.J. June 30, 2011) (finding that the contract "unequivocally establishes that an assignment of the only plan benefit at issue (*i.e.,* the benefit of reimbursement) was in fact made") report and recommendation adopted, Civ. No. 10–4260, 2011 WL 4737063 (D.N.J. Oct. 6, 2011). This Court is persuaded that more than the bare right to payment is necessary to confer derivative standing under ERISA.

[5]   The Court is also mindful that "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer,* 913 F.2d at 111.

[6]   The Court notes that due to the availability of a state court action in this instance, it would be a waste of judicial resources to litigate the validity of the purported assignment in federal court as Defendant's defense would deprive this Court of jurisdiction.

MedWell, LLC v. CIGNA Healthcare of New Jersey, Inc., Slip Copy (2013)

57 Employee Benefits Cas. 2067

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

2013 WL 705612
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

**MHA, LLC,** d/b/a "Meadowlands Hospital
Medical Center" and d/b/a "Meadowlands
Hospital Rehabilitation Institute," Plaintiff,
v.
**AETNA HEALTH,** INC. and John Does 1–10,
Defendants.

Civil Action No. 12–2984 (SRC). | Feb. 25, 2013.

**Attorneys and Law Firms**

A. Ross Pearlson, Daniel D. Barnes, Wolff & Samson,
West Orange, NJ, for Plaintiff.

Edward S. Wardell, Connell Foley LLP, Cherry Hill, NJ,
Tricia B. O'Reilly, Patricia A. Lee, Connell Foley LLP,
Roseland, NJ, for Defendants.

**Opinion**

**OPINION**

CHESLER, District Judge.

**\*1** This matter comes before the Court on Defendant
**Aetna Health,** Inc.'s ("Defendant" or "**Aetna**") motion
to dismiss the Complaint. (Docket Entry 8) Plaintiff **MHA,
LLC** ("**MHA**" or "Plaintiff") has opposed the motion.
(Docket Entry 16) The Court will rule on the papers
submitted, and without oral argument, pursuant to Federal
Rule of Civil Procedure 78. For the reasons that follow,
the Court will grant the motion and dismiss the Complaint
with prejudice.

**I. THE FACTS¹**
This lawsuit arises out of a billing dispute between a
hospital and a **health** insurance company over the rate at
which the hospital should be reimbursed for services
provided to the insurer's plan participants and
beneficiaries.

Plaintiff **MHA** is the current owner of Meadowlands

Hospital Medical Center and Meadowlands Hospital
Rehabilitation Center (collectively "Meadowlands
Hospital" or "Meadowlands") located in Secaucus, New
Jersey. Meadowlands Hospital, founded in 1976, is an
acute care facility with approximately 230 beds.
Meadowlands Rehabilitation Institute is housed within
Meadowlands Hospital and provides rehabilitation
treatment to patients. Pursuant to an Asset Purchase
Agreement ("APA"), **MHA** purchased Meadowlands
Hospital from Liberty Healthcare System, Inc. and
Liberty Riverside Healthcare, Inc. (collectively "Liberty")
on December 7, 2010. Defendant **Aetna** is a **health**
insurance company providing **health** benefits to plan
participants and beneficiaries who received **health** care
services at Meadowlands after that date.

The crux of the dispute between the parties is whether,
after the December 2010 sale of Meadowlands, **MHA**
was bound, either contractually or by operation of law, to
continue to provide services to **Aetna** plan members and
beneficiaries at the reduced in-network ("INET") rates
negotiated between **Aetna** and Liberty. In August 1996,
Liberty entered into a Managed Care Agreement
("MCA") with **Aetna**, pursuant to which **Aetna** agreed to
provide INET benefits to its participants and beneficiaries
who received medical services at Meadowlands. Liberty
agreed to provide hospital care and other services to
**Aetna's** plan participants and beneficiaries in accordance
with a fee schedule incorporated into the MCA. The INET
fee schedule generally provides for rates substantially
lower than what Meadowlands would have charged as an
ONET provider. The MCA was amended at various times,
most recently in 2010, before **MHA** purchased
Meadowlands.

According to Plaintiff, the APA between Liberty and
**MHA** specifically excluded the MCA from the list of
assets being transferred. Plaintiff maintains that, aside
from the APA, which conveyed some but not all of
Liberty's assets to **MHA**, the two entities had no legal
relationship. Plaintiff alleges that **Aetna** has conceded as
much by denying **MHA** access to the MCA it now argues
is binding upon it. Plaintiff further contends that the MCA
itself specifically prohibits Liberty from assigning its
rights and obligations under the agreement without
**Aetna's** prior written consent, which was neither
requested nor granted.

**\*2** Since the sale of Meadowlands Hospital, **Aetna** has
continued to reimburse **MHA** at the INET rates provided
in the MCA. Plaintiff claims that it should be reimbursed
as an ONET provider. According to Plaintiff, the INET
rates are drastically lower than what **MHA** receives from

**health** insurers and other payors for the same services, typically consisting of 0–15% of the billed charges. Plaintiff maintains that, since the onset of this dispute, **Aetna** has underreimbursed **MHA** by over $39 million. For its part, **Aetna** contends that **MHA** is legally bound to provide services as an INET provider and has refused to reimburse **MHA** for claims that exceed those allowed by the MCA fee schedule for INET providers.

Plaintiff has brought suit, asserting both federal and state law causes of action.[2] **Aetna** has moved to dismiss the Complaint on a number of grounds, including that Plaintiff lacks standing to sue under ERISA.

## II. DISCUSSION

### A. Standard of Review

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true. *Twombly,* 550 U.S. at 555; *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008). The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555; *see also Iqbal,* 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The Third Circuit, following *Twombly* and *Iqbal,* has held that the pleading standard of Rule 8(a) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.' " *Phillips,* 515 F.3d at 234. In a Rule 12(b)(6) motion, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and indisputably authentic documents if the complainant's claims are based upon those documents. *See White Consol. Indus.,* 998 F.2d at 1196.

### B. ERISA Claims

Defendant argues that Plaintiff has no power to sue under § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* It is well-established that standing to sue under ERISA § 502(a), the statute's civil enforcement mechanism, is generally limited to participants or beneficiaries of ERISA plans. 29 U.S.C. § 1132(a); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 399–400 (3d Cir.2004). Plaintiff, who is neither a participant nor a beneficiary, argues that it may sue as an assignee. In short, Plaintiff alleges that it received assignments from participants/beneficiaries of ERISA-covered **Aetna** benefits plans that allow it to "stand in the shoes" of those patients and pursue the instant action. As this Court recognized in *Franco v. Conn. Gen. Life Ins. Co.,* "the Third Circuit has not settled the question of standing to sue under ERISA § 502 by assignment." 818 F.Supp.2d 792, 808 (D.N.J.2011) (citing *Pascack Valley* Hosp., 388 F.3d at 401; *Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan,* 143 F.App'x 433, 435 (3d Cir.2005)). But a number of other circuits have recognized a plaintiff's right to sue under § 502 by assignment. *Tango Transport v. Healthcare Fin. Servs.,* 322 F.3d 888, 891 (5th Cir.2003); *Morlan v. Universal Guar. Lif. Ins. Co.,* 298 F.3d 609, 614–15 (7th Cir.2002); *Sys. Council Em–3 v. AT & T Corp.,* 333 U.S.App. D.C. 63, 159 F.3d 1376, 1383 (D.C. Circuit 1998); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.,* 156 F.3d 223, 226 (1 st Circ.1998); *St. Francis Reg'l Med. Ctr. v. Blue Cross and Blue Shield of Kan.,* 49 F.3d 1460, 1464–65 (10th Cir.1995); see also *Pascack Valley Hosp.,* 388 F.3d at 401 (stating that "almost every circuit that has addressed the issue has ruled that a **health** care provider can assert a claim under § 502(a) when a beneficiary or participant has assigned to the provider the individual's benefits under the plan"). Courts within the District of New Jersey have also concluded that a provider may have derivative standing under § 502. *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.,* No. 06–928, 2007 U .S. Dist. LEXIS 61137, *9–10, 2007 WL 2416428 (D.N.J. Aug. 20, 2007); *Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs.,* No. 07–2538, 2008 U.S. Dist. LEXIS 13370, 2008 WL 8874292 (D.N.J. Feb. 21, 2008). This Court will therefore assume, as it did in *Franco,* "that providers may assert such a claim 'where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan.' " 818 F.Supp.2d at 808 (quoting *Pascack Valley Hosp.,* 388 F.3d at 401).

**\*3** In *Franco,* this Court stated that, in order to confer ERISA standing upon a putative assignee, "the assignment must encompass the patient's legal claim to benefits under the plan." 818 F.Supp.2d at 808. The question before the Court, then, is whether Plaintiff has adequately pled that it received at least one such assignment sufficient to confer Plaintiff with ERISA standing. Plaintiff makes a number of arguments in support of its claim to ERISA standing. First, Plaintiff offers a narrow interpretation of *Franco,* seeking to

MHA, LLC v. Aetna Health, Inc., Not Reported in F.Supp.2d (2013)

distinguish it on factual grounds. Second, Plaintiff argues that the assignment at issue in this case satisfies even a broad reading of *Franco*.[3] Third, Plaintiff points to cases from within this District, the Third Circuit, and elsewhere that it suggests are contrary to *Franco*. Fourth, Plaintiff argues that Defendant has waived any standing defense it may have through its conduct. The Court will consider each of Plaintiff's arguments in turn.

The essential facts in *Franco* are, on their face, very similar to the facts of this case. In relevant part, *Franco* involved ERISA claims brought by several ONET providers and associations whose members consisted of physicians and non-physicians who provided ONET services to patients insured by defendant CIGNA. *Id.* at 803. The defendant moved to dismiss the complaint on the grounds that the provider plaintiffs were neither "beneficiaries" nor "participants" of the ERISA covered CIGNA **health** plans and thus lacked standing to bring suit under § 502(a). *Id.* at 807. The provider plaintiffs argued that they had properly alleged standing based upon "assignments" from ERISA participants and beneficiaries. *Id.* The complaints, which varied from each other only slightly, made allegations such as "patients sign a form assigning their **health** benefits .... in advance of treatment" and "patients sign a form fully assigning their **health** benefits within the meaning of ERISA." *Id.* at 810. The Court held that the provider plaintiffs failed to establish their standing to sue under ERISA, because their assignment allegations fell short of the requirements of Federal Rule of Civil Procedure 8(a), as construed by the Supreme Court in Iqbal and *Twombly*. *Id.* The Court stated:

> At best, the allegations provide only the most ambiguous and conclusory information about what the purported assignments entail. At worst for Provider Plaintiffs, they indicate that the assignments were limited to a patient's assigning his or her right to receive reimbursement from CIGNA for the covered portion of the service bill, which in no way can be construed as tantamount to assigning the right [to] enforce his or her rights under the plan.

*Id.* at 811. In *Franco*, the Court made clear that, in cases where a purported assignment "is limited to direct receipt of the ONET reimbursement and/or is qualified by the provider's reservation of his or her right to collect the entire charge for the service from the patient, the claim

for ONET benefits .... continues to run to the patient-insured," and there has been no complete, standing-conferring assignment under ERISA. *Id.* In other words, there can be no standing-conferring assignment if the patient-insured ultimately remains "on the hook" for the services rendered.

**\*4** Plaintiff seeks to distinguish *Franco* on three factual grounds: First, unlike the plaintiff in *Franco*, **MHA** included the language of its alleged assignment in its pleading rather than merely relying on general and conclusory allegations that an assignment existed, *see* 818 F.Supp.2d at 810. Second, Plaintiff argues that the scope of the assignment at issue in this case is broader than that considered in *Franco*. Third, **MHA** argues that the danger of double recovery that existed in *Franco* is not present here, because **MHA** is the sole plaintiff in this case.

It is true that, in *Franco*, the plaintiffs could not establish standing in part because they failed to provide the specific language of the purported assignments. *Id.* But, as stated above, the Court also held that "the assignment must encompass the patient's legal claim to benefits under the plan." *Id.* at 808. In other words, alleging the specific language of the purported assignment is a necessary, not sufficient, condition. A plaintiff cannot satisfy his burden to establish ERISA standing merely by quoting the language of the purported assignment in the complaint—he must allege specific facts that show that the "alleged assignments encompass the patients' rights to receive the benefits of their **health** plan's .... coverage." *Id.* at 808 (citing *Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 Fed. Appx. 433, 435 (3d Cir.2005)). Therefore, the fact that **MHA** has alleged the specific contractual language on which it relies does not, by itself, bring this case outside *Franco's* domain.

The Court is equally unpersuaded by Plaintiff's argument that the scope of the assignment at issue here is broader than that hinted at in *Franco*. There, though the complaint did not contain the language of the purported assignment, there was an indication that the patients involved had only transferred the "right to reimbursement by the insurer for an ONET service, such that the provider would submit a claim for reimbursement and the insurer would be authorized to send this payment directly to the provider." *Id.* at 811. The contract language **MHA** relies on provides:

> I authorize payment directly to Meadowlands Hospital Medical Center for hospital medical insurance benefits (from Medicare, Medicaid, commercial insurance,

MHA, LLC v. Aetna Health, Inc., Not Reported in F.Supp.2d (2013)

worker's compensation, auto insurance, etc.) that I may be entitled to for the charges of the care/treatment provided to me.

(Compl.¶ 51) **MHA** argues that this authorization, unlike the one at issue in *Franco*, "unambiguously consists of an assignment of *all* of the patient's **health** insurance benefits, including a right to sue for those benefits." (P.'s Opp. Br. 17) (emphasis in original) **MHA** supports its broad construction of the provision by pointing to the phrase "might be entitled to," which it argues "contemplates an assignment of benefits beyond that of mere payment, but also of the patient's right to enforce his/her entitlement to that payment, including .... disputing a deficient payment directly with the insurer or via litigation." (*Id.*) **MHA** further argues that the Court's duty, under Rule 12(b)(6), to accept all factual allegations in the Complaint as true and view them in the light most favorable to the non-moving party requires the Court to resolve any doubt as to the scope of the purported assignment in favor of **MHA's** interpretation. But the Court does not agree that it is faced with more than one "plausible, competing interpretation[ ]" of the contractual language at issue. *See Devcon Int'l Corp. v. Reliance Ins. Co.*, 609 F.3d 214, 220 (3d Cir.2010). It is plain to the Court that the quoted General Consent/Authorization language merely authorizes an insurer to make payments to **MHA** directly rather than through the patient as an intermediary. *See Franco*, 818 F.Supp.2d at 811. As such, this authorization is precisely the kind this Court regarded as insufficient to confer ERISA standing upon a provider in *Franco*.

**\*5** The Court also rejects Plaintiff's contention that this case does not raise the same possibility of double recovery that concerned the Court in *Franco*. There, the Court stated that the plaintiffs' pleading deficiencies were "particularly glaring in light of the fact that .... plan subscribers also assert[ed] ERISA § 502 claims themselves seeking to recover for the very same type of injuries." *Id.* at 811. The Court noted that "[t]he inherent tension in the pursuit of ERISA claims by both plan subscribers and providers who claim standing as assignees of the subscribers renders the need for the exact language of the applicable assignment provisions that much more crucial to sorting out the standing issue." *Id.* But Defendant is correct that **MHA's** status as the sole plaintiff in this action does not eliminate concern about double recovery and overlapping claims. In the Complaint, Plaintiff concedes that it has "balance billed"[4] **Aetna's** plan participants for the amount that **Aetna** has refused to pay. Contrary to Plaintiff's argument, recognizing **MHA's** standing to assert the ERISA rights

of plan participants whom it has held personally responsible for balances unpaid by **Aetna** would pose the same threat of overlapping claims and double recovery this Court warned of in *Franco*.

Plaintiff also argues that following *Franco* would put this Court at odds with the majority of courts from around the country and within the District of New Jersey "that have repeatedly held that assignment language similar to that used here confers standing." (P.'s Opp. Br. 10)

Plaintiff relies upon *Sportscare of Am., P.C. v. Multiplan, Inc .*, which arose in the context of a motion to remand an action initiated in New Jersey Superior Court and pleading only state law claims. 2011 U.S. Dist. LEXIS 6295, at *3, 2011 WL 223724 (D.N.J. Jan. 24, 2011). Magistrate Judge Falk issued a Report and Recommendation ("R & R") urging the District Court to deny remand on the grounds that the state law claims were preempted by ERISA. *Id.* at * 15. This Court concludes that *Sportscare's* unusual procedural context distinguishes it from the present case. In *Sportscare*, the plaintiff arguing against the presence of a valid assignment had specifically alleged the *presence* of such an assignment in the complaint. *Id.* at * 10. Accordingly, the Court treated the plaintiff's allegation as a judicial admission. *Id.* at * 11. The Court stated that it would be unfair for the plaintiff, at the remand stage, to disclaim an allegation expressly made in the complaint. *See id.* at *11–12 ("There are strict time limits for removal, see 28 U.S.C. § 1446(b), and Defendants have a right to rely on the allegations of the complaint in removing a case, which are assumed as true for removal purposes."). The case at bar does not involve the same element of estoppel that was present in Sportscare.[5] Here, the Provider Plaintiff brought suit in federal court alleging standing as an assignee. Accordingly, Plaintiff has the burden of proving that the alleged assignments "encompass the patient's legal claim to benefits under the plan." Franco, 818 F.Supp.2d at 808.

**\*6** Plaintiff also relies upon *Wayne Surgical Ctr.*, **LLC** *v. Concentra Preferred Sys.,* No. 06–928, 2007 U.S. Dist. LEXIS 61137, 2007 WL 2416428 (D.N.J. Aug. 20, 2007). In *Wayne Surgical,* an ambulatory surgical care provider brought suit against a **health** care management company in New Jersey Superior Court, alleging a number of state law causes of action. *Id.* at *2–3. The defendant insurer removed the case to federal court, arguing, among other things, that plaintiff's state law claims were preempted by ERISA. *Id.* at *5. Plaintiff moved to remand, and the Court was forced to consider whether, despite the absence of a federal claim on the face of the complaint, ERISA displaced the state law causes of action and stated a

MHA, LLC v. Aetna Health, Inc., Not Reported in F.Supp.2d (2013)

federal question. *Id.* at \*5. Under the Third Circuit's decision in *Pascack Valley Hosp.,* supra, the preemption question hinged in part on whether the plaintiff could have brought its breach of contract claim under § 502(a) of ERISA in the first instance, which in turn implicated the plaintiff's hypothetical ERISA standing. *Id.* at \*7. But *Wayne Surgical* does little to advance Plaintiff's argument that the purported assignment in this case constitutes a complete assignment of benefits sufficient to confer Plaintiff with ERISA standing, because in *Wayne Surgical,* the scope of the assignment was not disputed by the parties. *Id.* at \*9. Indeed, the central focus of *Wayne Surgical* is on the threshold question of whether ERISA allows for assignee standing, *assuming* the existence of a valid assignment. *Id.* at \*8–14 (following *Tango Transport v. Healthcare Financial Services,* 322 F.3d 888, 891 (5th Cir.2003), to hold that ERISA benefits can be assigned because, although Congress included an anti-assignment provision pertaining to pension plans under ERISA, it did not include such a provision for **health** care benefits) Therefore *Wayne Surgical* does not undermine this Court's conclusion that the assignment at issue in this case falls short of what is necessary to constitute a valid assignment of benefits under ERISA.

Another recent authority relied upon by Plaintiff is *Premier Health Ctr., P.C. v. UnitedHealth Group,* No. 11–425, 2012 U.S. Dist. LEXIS 44878, 2012 WL 1098543 (D.N.J. Mar. 30, 2012). There, the Court held that the provider plaintiffs' quotation of assignment language in the complaint was sufficient to establish derivative standing to sue under § 502 of ERISA. *Id.* at \* 19. Plaintiff argues that the language of the assignment in *Premier* was similar to the purported assignment in this case. But that is not so. Unlike the provision in this case, the assignment considered in *Premier* expressly stated that "THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY." *Id.* at \* 18. Plaintiff is correct, however, that the assignment considered in *Premier* also contained language expressly reserving the provider's right to payment from the patient for any balance "over and above" the insurance payment. *Id. Premier* also casts doubt on the view that an assignment is only effective to establish derivative standing where there is a complete assignment of benefits. *See id .* at \*20. In *Franco,* this Court rejected the view that a purported assignment is effective to confer standing under § 502 where it "is limited to direct receipt of the ONET reimbursement and/or is qualified by the provider's reservation of his or her right to collect the entire charge for the service from the patient." 818 F.Supp.2d at 811. This Court respectfully disagrees with *Premier* to the extent it can be read as in conflict with that holding.

\*7 Plaintiff also relies heavily upon *North Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins.* Co., No. 10–4260, 2011 U.S. Dist. LEXIS 119762, 2011 WL 4737007 (D.N.J. June 30, 2011), a case similar in many respects to *Wayne Surgical,* supra. In *North Jersey Brain,* a plaintiff neurosurgical medical provider brought suit against a **health** insurer and plan administrator in New Jersey Superior Court, alleging various state common law causes of action. *Id.* at \*3. The defendant insurer removed the case to federal court, arguing, among other things, that plaintiff's state law claims were preempted by ERISA. *Id.* at \*5. As with *Wayne Surgical,* the preemption question in *North Jersey Brain* implicated whether the plaintiff would have had standing to bring suit under ERISA. *Id.* at \* 10–11. The defendant insurer argued that the plaintiff provider had standing to bring suit under ERISA pursuant to patient assignments, which stated "I hereby assign to North Jersey Brain & Spine Center all payments for medical services rendered to myself or my dependents." *Id.* at \* 14. The Court held that the executed form "unequivocally establishe[d] that an assignment of the only plan benefit at issue (i.e., the benefit of reimbursement) was in fact made." *Id.* at \*17–18. The court went on to hold that no other legal duty supported the plaintiff provider's claim, and remand was therefore unwarranted. *Id.* at \*25. Judge Arleo's R & R denying the plaintiff's motion to remand was adopted by Judge Wigenton. *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co .,* No. 10–4260, 2011 U.S. Dist. LEXIS 115757, 2011 WL 4737063 (D.N.J. Oct. 6, 2011).

**MHA** argues that a rejection of plaintiff's standing in this case would be at odds with the reasoning in *North Jersey Brain.* Defendant distinguishes *North Jersey Brain* on the grounds that the language of the provision considered in that case was an express assignment of benefits in a way that the provision at issue in this case is not. While it is true that the language of the authorization at issue in *North Jersey Brain* has a stronger claim to status as a valid assignment, it must also be conceded that this Court's view of what constitutes a valid assignment of rights under § 502 is fundamentally at odds with the opinions of Judge Arleo and Judge Wigenton. In particular, the Court respectfully disagrees with the view that there is "no distinction between an assignment of a right to payment and an assignment of plan benefits." 2011 U.S. Dist. LEXIS 119762 at \* 15, 2011 WL 4737067. It is only the latter that creates derivative standing in a provider assignee to sue under § 502. *Franco,* 818 F.Supp.2d at 811; *N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.,* 2008 U.S. Dist. LEXIS 71231, at \*10–11, 2008 WL 4371754 (D.N.J. Sept. 17, 2008); *Cooper Hosp. Univ. Med. Ctr. v.*

MHA, LLC v. Aetna Health, Inc., Not Reported in F.Supp.2d (2013)

*Seafarers* **Health** *& Benefits Plan,* 2007 U.S. Dist. LEXIS 71358, at *8–9, 2007 WL 2793372 (D.N.J. Sept. 25, 2007).

Notwithstanding the considered opinions of other courts that may be to the contrary, this Court concludes that the authorization provision in this case does not rise to the level of an assignment of rights under ERISA. According to *Black's Law Dictionary* (9th ed.2009), "assignment" is a term of art meaning the "transfer of rights or property." The Third Circuit, providing a statement of New Jersey law, held that "[a]n assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such performance." *In re Jason Realty, L.P.,* 59 F.3d 423, 427 (3d Cir.1995) (citing *Restatement (Second) of Contracts* § 317 (1981) and *Aronsohn v. Mandara,* 98 N.J. 92, 98, 484 A.2d 675 (1984)). According to the leading treatise on contract law, "the elements of an effective assignment include a sufficient description of the subject matter to render it capable of identification, and delivery of the subject matter, with the intent to make an immediate and complete transfer of all right, title, and interest in and to the subject matter to the assignee." 29 *Williston on Contracts* § 74:3 (4th ed.2012); *see also K. Woodmere Assocs., L.P. v. Menk Corp.,* 316 N.J.Super. 306, 314, 720 A.2d 386 (App.Div.1998) (quoting *Williston* for the elements of a valid assignment). A valid assignment "transfers the whole of the interest in the right." *Presley's Estate v. Russen,* 513 F.Supp. 1339, 1350 (D.N.J.1981). Only an assignment that clearly reflects the assignor's intent to transfer his rights will be effective. *Tirgan v. Mega Life* **& Health** *Ins.,* 304 N.J.Super. 385, 390, 700 A.2d 1239 (App.Div.1997); *Restatement (Second) of Contracts* § 324 (1981). Moreover, "[f]or an assignment to be created [under New Jersey law], the effect must be that the assignor retains no power to revoke the assignment." *In re Fontaine,* 231 B.R. 1, 4 (Bankr.D.N.J.1999) (quoting *Sheeran v. Sitren,*168 N.J.Super. 402, 414, 403 A.2d 53 (Law Div.1979)). In other words, as a result of a valid assignment, the assignor loses all control over the subject matter of the assignment and all interest in the right assigned. *Sheeran,* 168 N.J.Super. at 414, 403 A.2d 53. To determine the patient-assignor's intent, the Court applies an objective standard and properly looks to the language of the intake form provision as the "strongest objective manifestation of intent." *Baldwin v. Univ. of Pittsburgh Med. Ctr.,* 636 F.3d 69, 76 (3d Cir.2011); *see also In re Jason Realty,* 59 F.3d at 427 (holding that "[t]he precise wording determines the effect of the assignment.").

*8 Plaintiff argues that it has standing to sue under ERISA because it received valid assignments of benefits from **Aetna** plan beneficiaries and participants. If Plaintiff were correct, that would mean the beneficiaries retained no legal rights to pursue **Aetna** for benefits regardless of what actions it took with regard to the claims. In theory, under such a scenario, if **Aetna** fully rejected a valid claim, only **MHA** would have the legal right to pursue **Aetna**, regardless of whether or not **MHA** balance billed the patient-insured. There is simply nothing in the language cited by Plaintiff that suggest that the parties intended such a full transfer to take place. Rather, the only reasonable interpretation is that the parties, for convenience, anticipated that the provider would be able to receive payment directly from the insurer without the beneficiary relinquishing his or her rights.

Finally, Plaintiff has argued that **Aetna** has waived, by its conduct, any defense that **MHA** lacks standing to pursue this action in federal court. Plaintiff argues that **Aetna** and **MHA** engaged in a claims review process for hundreds of claims, and **Aetna** never once asserted that **MHA** was not entitled to file claims on behalf of **Aetna** plan participants. According to Plaintiff, **Aetna's** omission constitutes a knowing waiver of any objection to **MHA's** ERISA standing. This argument deserves short shrift.

Even assuming § 502(a) permits "standing by waiver," there is nothing inconsistent about **Aetna** objecting to **MHA's** ability to sue under ERISA after having engaged with **MHA** in presuit claims reviews. Whether **Aetna** might somehow be estopped from refusing to recognize **MHA's** rights to file claims on behalf of **Aetna** plan participants is a separate matter entirely from whether **MHA** has satisfied a necessary element of an ERISA claim. **Aetna's** position is that the authorization form only granted **MHA** the right to collect reimbursements directly from **Aetna** but did not rise to the level of a full assignment of ERISA benefits. Not only is **Aetna's** position internally consistent, it is *strongly* supported by the plain language of the authorization form.

**C. State Law Claims**

Defendant argues that Plaintiff's state law claims for breach of contract and violation of the duty of good faith and fair dealing (Count VII), punitive damages (Count VIII), quantum meruit (Count IX), and unjust enrichment (Count X) are fully preempted by the ERISA claims. The Court agrees.

ERISA preemption of state law causes of action is well-established. *See* **Aetna Health,** *Inc. v. Davila,* 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

MHA, LLC v. Aetna Health, Inc., Not Reported in F.Supp.2d (2013)

ERISA § 502(a) is the statute's civil enforcement mechanism, and subsection (1)(B) expressly grants a plan participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a) (1)(B). The Supreme Court has held that "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts and ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Davila,* 542 U.S. at 209 (quoting *Metropolitan Life,* 481 U.S. at 65–66). Indeed, the statute itself contains a preemption provision. ERISA § 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Suits brought by participants or beneficiaries of ERISA plans concerning matters that "relate to" those plans are governed by the cause of action provided by ERISA § 502(a). *Davila,* 542 U.S. at 208–09.

*9 In this case, **MHA** is suing not as a participant or beneficiary, but as an assignee. Nevertheless, all of the state law causes of action seek to recover the benefits to which **MHA** claims it is entitled under the assignors' ERISA covered plans. Clearly, the claims "relate to" the plans. *See id.* As such, they must be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss the entire Complaint for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The Court will issue an Order dismissing the Complaint with prejudice.[6]

Footnotes

1   In a Rule 12(b)(6) motion, the Court is limited in its review primarily to the complaint and a few basic documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993). Accordingly, the Court's statement of the facts is derived entirely from the allegations contained in the Complaint (Docket Entry 8) and does not represent factual findings by the Court.

2   The counts in the Complaint are as follows: (1) violation of ERISA § 502(a); (2) violation of ERISA § 502(a)(3) fiduciary duties; (3) failure to provide "full and fair review" under ERISA § 502(a)(3); (4) failure to comply with federal claims regulations under ERISA § 502(a)(3); (5) request for information pursuant to ERISA § 502(c); (6) declaratory relief relating to **Aetna's** violation of ERISA; (7) breach of contract and violation of the duty of good faith and fair dealing; (8) punitive damages; (9) quantum meruit; and (10) unjust enrichment.

3   This argument is, in all important respects, conceptually identical to a section of Plaintiff's argument seeking to distinguish *Franco* factually. Accordingly, the Court will address Plaintiff's argument only in the context of whether or not *Franco* should be distinguished on factual grounds.

4   In the context of the healthcare industry, balance billing is the practice by a medical provider of billing a patient for the difference between the provider's actual charge and the amount reimbursed under the patient's **health** insurance benefits plan. Under balance billing, the patient is financially responsible to the provider for his or her co-payment obligation under the plan, plus any amount of the actual charge that exceeds the covered amount under the plan.

5   Although Judge Martini adopted Judge Falk's R & R in full, *Sportscare of Am., P.C. v. Multiplan, Inc.,* No. 10–4414, 2011 U.S. Dist. LEXIS 14251, at *2, 2011 WL 589955 (D.N.J. Feb. 10, 2011), the Court notes that, in a later case more procedurally akin to the case at bar, *Demaria v. Horizon Healthcare Servs.,* Judge Martini expressly followed *Franco* to hold that "[a]t best, the allegations provide only the most ambiguous and conclusory information about what the purported assignments entail. At worst for Plaintiffs, they indicate that the assignments were limited to a patient's assigning his or her right to receive reimbursement from Horizon for the covered portion of the service bill, which in no way can be construed as tantamount to assigning the right enforce his or her rights under the plan." 2012 U.S. Dist. LEXIS 161241, at *13–14, 2012 WL 5472116 (D.N.J. Nov. 9, 2012) (quoting *Franco,* 818 F.Supp.2d at 811–12).

6   The Court notes that, to the extent that Plaintiff seeks to pursue the limited issue of whether or not it is covered by the Managed Care Agreement negotiated between **Aetna** and Liberty, without seeking reimbursement as an ERISA assignee, such a dispute is purely a matter of contract law and is not governed by ERISA. *See Pascack Valley Hosp.,* 388 F.3d at 401.

MHA, LLC v. Aetna Health, Inc., Not Reported in F.Supp.2d (2013)

End of Document                                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

McDonough v. Horizon Blue Cross Blue Shield of New..., Not Reported in...

52 Employee Benefits Cas. 1542

2011 WL 4455994
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
D. **New Jersey**.

Cathleen **McDONOUGH**, Plaintiff,
v.
**HORIZON BLUE CROSS BLUE SHIELD** OF
**NEW JERSEY**, INC., Defendant.

Civil Action No. 09–571 (SRC). | Sept. 23, 2011.

**Attorneys and Law Firms**

Bruce Heller Nagel, Robert H. Solomon, Elliott Louis
Pell, Randee M. Matloff, Nagel Rice, LLP, Roseland, NJ,
for Plaintiff.

David Jay, Laurie Ann Poulos, Philip R. Sellinger,
Greenberg Taurig, LLP, Florham Park, NJ, James P.
Flynn, Michael J. Slocum, Fanny Ann Ferdman, Epstein,
Becker & Green, PC, Newark, NJ, for Defendant.

**Opinion**

**OPINION**

CHESLER, District Judge.

**\*1** This matter comes before the Court on the motion by
Defendant **Horizon Blue Cross Blue Shield** of **New
Jersey** ("Defendant" or "**Horizon**") to dismiss the
Amended Complaint filed by Plaintiff Cathleen
McDonough ("Plaintiff" or "**McDonough**") [docket
entry 61]. **McDonough** has opposed the motion. The
Court has opted to rule on the motion without oral
argument, pursuant to Federal Rule of Civil Procedure 78.
For the reasons set forth below, the motion will be
granted in part and denied in part.

**I. BACKGROUND**
The core of this putative class action involves the use of
an allegedly flawed database, maintained by a company
known as an Ingenix, to calculate out-of-network ("ONET")
benefits due to members of health benefits plans insured
or administered by **Horizon**. On **Horizon's** motion, this
Court had dismissed Plaintiff's original Complaint by

Order of October 7, 2009, based on the Complaint's
failure to allege sufficient facts to meet Federal Rule of
Civil Procedure 8(a)'s pleading standard. The Court also
granted leave to amend, and Plaintiff filed an Amended
Complaint on November 6, 2009. As the Court writes
only for the parties, it refers them to its October 7, 2009
Opinion for general background information about the
nature of this action. This Opinion will focus on whether
the facts alleged in the Amended Complaint adequately
state Plaintiff's claims for relief.

According to the Amended Complaint, **McDonough**, a
resident of **New Jersey**, has since 2005 been a member of
health plans fully insured by **Horizon** and sponsored by a
**New Jersey** small employer. In terms of coverage,
**McDonough's** plans distinguish between services sought
from providers who participate in **Horizon's** preferred
provider network ("Pars" or "in-network providers") and
those who do not participate in the network ("Nonpars" or
"ONET providers"). The primary difference between Pars
and Nonpars is that Pars have negotiated reduced rates
pursuant to agreement with **Horizon**, and thus under the
health benefits plan a **Horizon** plan member's financial
responsibility to the provider is capped, whereas Nonpars
are not required to accept reduced rates and may collect
their full charges directly from patients at the time of
service. Plaintiff alleges that each of the plans in effect at
the times relevant to this suit provide that reimbursement
for ONET charges will be based on a "reasonable and
customary" charge standard. As set forth in the Amended
Complaint, the plans identically define that term as
follows:

> Reasonable and Customary means an amount that is not
> more than the lesser of:
>
> • the usual and customary charge for the service or
> supply as determined by **Horizon** BCBSNJ [**Blue
> Cross Blue Shield** of **New Jersey**], based on a
> standard approved by the Board; or
>
> • the negotiated fee schedule.

> The Board will decide a standard for what is
> Reasonable and Customary under this Policy. The
> chosen standard is an amount which is most often
> charged for a given service by a Provider within the
> same geographic area. For charges that are not
> determined by a negotiated fee schedule, the Covered
> Person may be billed for the difference between the
> Reasonable and Customary charge and the charge
> billed by the Provider.

**\*2** (Am.Compl., ¶ 21.)

**McDonough** complains that on four occasions, she or her husband (who is a beneficiary under her plan) sought the services of a ONET provider. She alleges that **Horizon** did not reimburse the ONET claims at appropriate levels because it used "the flawed, corrupted and outdated Ingenix database" to determine the usual and customary rate ("UCR") for a service. (*Id.,* ¶ 26.) According to the Amended Complaint, Ingenix uses data contributed by health insurance companies, third-party payors and self-insured companies to create "uniform pricing schedules, which provide whole dollar payment amounts for each percentile (for example, the 80th percentile) for given medical procedures in various locations." (*Id.,* ¶ 35.) Plaintiff details numerous reasons why the Ingenix database is flawed and cannot, therefore, form the proper basis of an accurate UCR determination. Among these are contribution of inaccurate data by insurance companies (including **Horizon**), further scrubbing of data by Ingenix to remove high-end values but not low-end outliers so as to lower the average charge for ONET services, grouping geographic areas that do not reflect comparable charging patterns, and collection of insufficient data from contributors.

The gravamen of this action is that by using the flawed Ingenix data to determine UCR, **Horizon** failed to comply with its health plan obligation to cover ONET claims based on "the usual and customary charge for the service" and thus underpaid **McDonough's** ONET claims. Plaintiff also alleges that, by using the outdated and flawed database, **Horizon** violated its statutory fiduciary duties of loyalty and care. The Amended Complaint asserts eight counts, most of which seek relief for various alleged violations of the Employee Retirement Income Security Act ("ERISA"), 15 U.S.C. § 1001, *et seq.* It also asserts a claim under a **New Jersey** statute governing Small Employer Health Plans and a claim for common law breach of contract. **McDonough** brings these claims on behalf of a putative class of participants and/or beneficiaries of **Horizon** health plans, identified in the Amended Complaint as "all persons in the United States who are, or were, from February 9, 2003, members of any large or small employer health plan insured or administered by Defendant **Horizon** and subject or not subject to ERISA who received medical services or supplies (including, inter alia, surgery, anesthesia, and the like) from an out-of-network provider and received reimbursement less than the provider's billed charge." (Am.Compl., ¶ 3.)

## II. DISCUSSION

### A. Standard of Review

Defendant brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims asserted in the Amended Complaint for failure to state a claim upon which relief may be granted. A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court has held that this means that the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556.) "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 129 S.Ct. at 1150. To meet the pleading standard of Federal Rule of Civil Procedure 8(a), the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, but factual allegations that give rise to the mere *possibility* of unlawful conduct will not do. *Iqbal,* 129 S.Ct. at 1949; *Twombly,* 550 U.S. at 557. In short, an adequately-pled complaint must set forth facts that, taken as true, show that the plaintiff is plausibly entitled to relief. *Iqbal,* 129 S.Ct. at 1950.

### B. Viability of Claims Based on Horizon's Use of Ingenix

*3 **Horizon** moves that all claims, regardless of other deficiencies which will be discussed further below, be dismissed insofar as they are based on **Horizon's** use of Ingenix to determine UCR and calculate Plaintiff's ONET reimbursement pursuant to her plan. **Horizon** argues that such alleged wrongdoing cannot form the basis of a plausible claim for relief because **New Jersey** Small Employer Health Program ("SEHP") regulations, which govern **McDonough's** small employer health plan, required **Horizon** to use the Ingenix database to determine UCR. *See N.J.A.C.* 11:21–7.13. In other words, **Horizon** argues that liability under ERISA or any other legal theory cannot attach for conduct that complied with the law.

The regulation cited by **Horizon** in fact provides that ONET benefit payments may be based *either* on "allowed" charges for a service (referring to what plans, such as **McDonough's**, typically define as the "reasonable and customary" charges) *or* the provider's actual charge. *Id.* The regulation also provides that this "allowed" charge, or UCR, is to be determined according to fee schedules provided by Ingenix and specifies that "the maximum allowed charge shall be based on the 80th

McDonough v. Horizon Blue Cross Blue Shield of New..., Not Reported in...

52 Employee Benefits Cas. 1542

percentile" of the Ingenix curve or range of prevailing fee information. *Id.* Though the regulation authorizes use of Ingenix, the Court nevertheless finds **Horizon's** argument unpersuasive.

**McDonough's** health benefits plan entitled her to ONET benefits based on the "reasonable and customary charges" for the service obtained. The plan assured that the standard of "reasonable and customary" would reflect "an amount which is most often charged for a given service by a Provider within the same geographic area." (Am.Compl., ¶ 21.) **McDonough** alleges that she was under-reimbursed for several ONET services because **Horizon** used a flawed database to determine the "reasonable and customary charges" for the services—a standard that Plaintiff alleges **Horizon** did not meet when it used a database it knew could not generate accurate UCR information and thus could not comply with the plan definition of "reasonable and customary." The Amended Complaint alleges, indeed, that **Horizon** participated in creating the flaws in the Ingenix database. Assuming the facts of the Complaint to be true, **Horizon** did not fulfill its plan obligation with regard to ONET coverage as to four specifically identified ONET claims made pursuant to **McDonough's Horizon** plan. The cited SEHP regulation may not be used by **Horizon** as a shield, particularly in light of its own alleged involvement in the corruption of the Ingenix database and the available option, under the very same regulation, of calculating the ONET benefit using the provider's actual charge.

ERISA § 502(a)(1)(B) provides a private right of action to an ERISA plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In view of the facts alleged in the Amended Complaint, the Court finds that **McDonough** has adequately pled a claim to recover unpaid ONET benefits pursuant to § 502(a)(1)(B). To the extent **Horizon's** motion seeks dismissal of this claim, either for failure to meet the pleading requirements of Rule 8(a) or for failure to allege actionable wrongdoing, the Court will deny the motion.

**C. Claims Under ERISA § 502(a)(3)**
*4 Counts III, IV and V each assert claims under ERISA § 502(a)(3), the ERISA provision which entitles plan participants or beneficiaries to seek injunctive and/or equitable relief to remedy statutory violations. 29 U.S.C. § 1132(a)(3). **Horizon's** motion seeks dismissal of the § 502(a)(3) claims in two respects: First, **Horizon** maintains that the claims are duplicative of each other and that the

action need not proceed with more than one claim under § 502(a)(3) to afford Plaintiff the relief she seeks. Second, **Horizon** takes issue with the alleged wrongdoing on which the claims are based, arguing that for the most part, the predicate misconduct—assuming the factual allegations are true—fails to state an ERISA violation.

**Horizon's** point regarding the duplicate nature of the claims may be dispensed with simply, in that the argument elevates form over substance. The claims are not redundant, as each separately asserted § 503(a)(3) claim complains of a different alleged ERISA violation. Our rules, moreover, permit alternative pleading. *In re K–Dur Antitrust Litig.,* 338 F.Supp.2d 517, 544 (D.N.J.2004); *see also U.S. LEC Comm'ns LLC v. Qwest Comm'ns Co., LLC,* No. 10–4106, 2011 WL 2474262, at *4 (D.N.J. June 20, 2011) (contrasting redundant pleading with alternative pleading and noting that "[a]lternative pleading, which is permitted, allows a party to plead different theories of a claim when the relevant factual or legal issues differ, or they afford different relief."). While it is true that the Amended Complaint could have been drafted so as to state in one single count all alleged misfeasance upon which Plaintiff believes she is entitled to relief under § 503(a)(3), the drafting style of the Amended Complaint does not bear upon the question of whether Plaintiff has stated a viable cause of action. That is the question before the Court. Thus, the Court will proceed to examine whether the factual allegations, be they set forth in one count or several counts, show that **Horizon** committed statutory violations such that Plaintiff sets forth a plausible § 502(a)(3) claim.

In Count III, the Amended Complaint alleges that **Horizon** breached its fiduciary duty of loyalty and due care, as set forth in ERISA § 404(a)(1) in two ways: by making benefits determinations to **Horizon's** own gain and at the expense of plan members and by failing to inform members of the flaws in the Ingenix database which rendered it wholly unsuited to UCR determinations. Count IV's claim alleges that **Horizon** failed, as required by ERISA § 503, to provide a full and fair review of denied claims by "failing to disclose data and/or the methodology it relied on in determining UCR." (Am.Compl., ¶ 119.) Count V alleges that **Horizon** failed to comply with ERISA claims procedure regulations in denying ONET benefits to **McDonough**. **Horizon** is correct that the majority of the alleged wrongdoing on which the § 502(a)(3) claim is based fails to state an actionable violation of ERISA.

*5 As to the alleged breach of fiduciary duty based on non-disclosure (Count III), neither the Amended Complaint nor Plaintiff's brief in opposition to the motion

McDonough v. Horizon Blue Cross Blue Shield of New..., Not Reported in...

52 Employee Benefits Cas. 1542

to dismiss cite to an ERISA provision which would obligate **Horizon** to disclose UCR data and/or ONET claims processing methodology in order to fulfill its statutory fiduciary duty. The statutory source of fiduciary obligation is ERISA Section 404, which requires, among other things, that the fiduciary discharge its duties according to the "prudent man" standard. 29 U.S.C. § 1104(a)(1)(B). The Third Circuit has held that this standard encompasses a duty to provide certain information but that such duty is limited to disclosure of "those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs.,* 93 F.3d 1171, 1182 (3d Cir.1996). The test of materiality inquires whether there is a substantial likelihood that the omission of the information "would mislead a reasonable employee in making an adequately informed decision." *Jordan v. Fed. Express Corp.,* 116 F.3d 1005, 1015 (3d Cir.1997). Plaintiff has not cited, nor has the Court's independent research uncovered any binding authority holding that the fiduciary duty of disclosure under ERISA requires that a plan fiduciary disclose the data the plan uses to determine what constitutes UCR, or as Plaintiff specifically alleges, to disclose the flaws in the Ingenix database. Even assuming the statute required disclosure to plan beneficiaries of the data upon which the fiduciary calculates an ONET benefit payment, Plaintiff does not allege that such information was not known to her. Her plan, in fact, expressly states that the standard will be determined by the Board [of Directors of the **New Jersey** SEHP Program], which by regulation prescribes the use of Ingenix. Certainly, Plaintiffs have not supported their position that ERISA or its implementing regulations require a fiduciary to inform beneficiaries regarding the quality of the data. Indeed, the Third Circuit has expressed reluctance at giving section 404 such broad interpretation that the provision, which does not by its express terms set forth any disclosures that must be made, somehow can be turned into an unlimited disclosure obligation. *See Horvath v. Keystone Health Plan East, Inc.,* 333 F.3d 450, 462 n. 9 (3d Cir.2003) (citing *Weiss v. CIGNA Healthcare, Inc.,* 972 F.Supp. 748, 754 (S.D.N.Y.1997)).

To the extent, however, that the breach of fiduciary duty claim pled in Count III is based on **Horizon's** calculation of ONET benefits by using Ingenix in furtherance of **Horizon's** own interests, it will survive this motion to dismiss. As set forth above, Plaintiff alleges that **Horizon** used the flawed Ingenix database knowing it would provide artificially depressed UCR figures and thus result in the underpayment of ONET claims. These allegations sufficiently set forth that **Horizon** made ONET claims

decisions in its own interest and at the expense of plan participants and beneficiaries, in violation of **Horizon's** fiduciary duty of loyalty under ERISA § 404(a)(1)(A). 29 U.S.C. § 1104(a)(1)(A); *Reich v. Compton,* 57 F.3d 270, 290 (3d Cir.1995).

*6 Plaintiff also alleges the failure to disclose UCR data and/or methodology deprived her of her right to a "full and fair review" of **Horizon's** denial of her ONET claims in violation of ERISA § 503 (Count IV). Under § 503, a plan must set forth in writing its "specific reasons" for a denial of benefits and must afford participants the opportunity for a full and fair review of a claim denial decision. 29 U.S.C. § 1133. In the Amended Complaint, **McDonough** alleges that as to each ONET claim that was allegedly under-reimbursed, **Horizon** furnished a written Explanation of Benefits ("EOB") form that was "uninformative, false and misleading" in that the "EOBs provide [d] insufficient information as to the methodology or source of data used in calculating the values Defendant **Horizon** represents as UCR rates." (Am.Compl., ¶ 29.) In that way, according to Plaintiff, **Horizon** did not comply with section 503's mandate to provide a "specific reason" for benefit denials and thus rendered her "powerless to appeal any such improper determinations." (*Id.,* ¶ 30.) Again, Plaintiff fails to point to any statutory or regulatory authority that requires the level of detail she complains was not provided. Section 503 requires that a "specific reason" be given for a claim denial; it does not require, as the Amended Complaint's theory of liability would suggest, that the plan also explain what information the plan considered in arriving at its decision, in this case, the ONET claims processing methodology. No ERISA provision or implementing regulation requires an insurer to provide every bit of data underlying a claim decision and details about the way in which that data was used. Yet, Plaintiffs' assertion of a § 503 violation would appear to assume that the functional equivalent of a data report on the calculation of UCRs is a necessary component of ERISA's disclosure requirements. Such disclosure of detailed statistical compilations and data was certainly not the intent of the drafters of ERISA or related regulations. Neither the factual allegations of the Amended Complaint nor the legal authority it invokes bear out this theory of liability.

As for Plaintiff's claim for relief under § 502(a)(3) for failure to comply with ERISA's procedural regulations, it is based on conclusory allegations and fails to identify what regulations were allegedly violated. Defendant argues that even assuming the factual allegations indicated that **Horizon** had committed some procedural violation in denying or disallowing some portion of **McDonough's** ONET claims, the claim must fail for lack

McDonough v. Horizon Blue Cross Blue Shield of New..., Not Reported in...

52 Employee Benefits Cas. 1542

of statutory remedy. Indeed, the Third Circuit has noted that it is a "general principle that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy." *Ashenbaugh v. Crucible 1975 Salaried Ret. Plan,* 854 F.2d 1516, 1532 (3d Cir.1988) (citing *Wolfe v. J.C. Penney Co.,* 710 F.2d 388, 393 (7th Cir.1983) and *Gilbert v. Burlington Indus., Inc.,* 765 F.2d 320, 328–29 (2d Cir.1985)).

*7 In short, **McDonough** has failed to plead facts that plausibly demonstrate that **Horizon** violated either ERISA § 404(a) or § 503 by failing to disclose the data and/or methodology used to determine UCR or ONET reimbursement. Moreover, it has failed to meet the plausibility standard of *Iqbal* and *Twombly* insofar as a remedy is sought for alleged procedural violations. Thus, as set forth above, insofar as Count III asserts a claim for breach of the fiduciary duty of loyalty based on **Horizon's** allegedly self-interested ONET claims decisions, the claim may proceed. To the extent, however, Plaintiff's claim in Count III for relief under ERISA § 502(a)(3) is based on a failure to disclose in breach of **Horizon's** fiduciary duties, it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Counts IV and V must be dismissed in their entirety for failure to state a claim upon which relief may be granted.

**D. Claim Under ERISA § 502(c)**

In Count VI of the Amended Complaint, Plaintiff asserts she is entitled to relief under ERISA § 502(c) based on **Horizon's** failure to supply accurate Summary Plan Description ("SPD") materials and failure to supply information requested by plan members. Plaintiff alleges that "**Horizon** failed to supply any SPDs to Plaintiff **McDonough** in 2005, 2006, 2007, 2008 and 2009." (Am.Compl., ¶ 107.) Moreover, according to the Amended Complaint, the SPD inaccuracies and overall non-disclosure consisted of "**Horizon's** failure to disclose material information about its UCR and other out-of-network reimbursement determinations." (Am.Compl, ¶ 129.) As **Horizon** argues, neither the alleged failure to supply an SPD nor alleged inaccuracy of the SPD give rise to an actionable ERISA violation.

First, it is well established that § 502(a) is "the exclusive remedy for rights guaranteed under ERISA." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Section 502(a)(1) authorizes a plan participant or beneficiary to bring a civil action to obtain the relief provided in § 502(c). In relevant part, § 502(c)(1) provides that "[a]ny administrator ... who fails or refuses to comply with a request for any

information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day...." 29 U.S.C. § 1132(c)(1). Plaintiff bases this claim on her allegation that **Horizon** failed to provide her with an SPD. Under ERISA § 104(b)(4), which is expressly referenced in § 502(c), a plan administrator must furnish a copy of the SPD "upon written request of any participant or beneficiary." 29 U.S.C. § 1024(b)(4). Plaintiff, however, neither alleges that she made a written request to **Horizon** for her plan's SPD or that **Horizon** failed to respond to the request within 30 days. Both elements are essential to establish a violation of § 104(b)(4) and trigger the penalties of § 502(c). *Kollman v. Hewitt Assoc.,* 487 F.3d 139, 144 (3d Cir.2007). Thus, to the extent Plaintiff's claim under § 502(a) and § 502(c) is premised on **Horizon's** alleged failure to provide an SPD, it fails to state a claim upon which relief may be granted.

*8 Second, insofar as Count VI might be construed as a § 502(a) claim premised on the SPD's failure to disclose ONET claims processing methodology, it lacks any statutory or regulatory support. ERISA § 102 specifically deals with SPD contents. It requires administrators to provide plan participants and beneficiaries with SPDs that include certain information listed in subsection (b) of the provision. 29 U.S.C. § 1022(a). The list does not include information concerning the methodology for determining UCR in particular or, more generally, for calculating the amount owed to the participant or beneficiary on an ONET claim. 29 U.S.C. § 1022(b). Plaintiff cites no implementing regulation or decisional law which would require **Horizon** to disclose the data it uses to determine what constitutes a "reasonable and customary" rate, nor is the Court aware of any. *Cf.* 29 C.F.R. § 2520.102–3(j)(3) (requiring the SPD to describe, among other things, "whether, and under what circumstances, coverage is provided for out-of-network services" but not all data underlying a ONET reimbursement calculation).

Accordingly, the claim set forth in Count VI of the Amended Complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**E. Claim For Declaratory Relief under ERISA**

Count II of the Amended Complaint pleads for declaratory relief under ERISA. To the extent Plaintiff seeks a declaration that **Horizon** violated ERISA by failing to disclose information related to UCR data and/or

McDonough v. Horizon Blue Cross Blue Shield of New..., Not Reported in...

52 Employee Benefits Cas. 1542

methodology, Plaintiff is not entitled to such relief for the reasons discussed above in Sections C and D. Insofar, however, as the Amended Complaint may seek declaratory relief for the ERISA claims that do survive this motion to dismiss, the Court will not strike Plaintiff's plea for that remedy.

**F. Claim For Violation of New Jersey SEHP Regulation**

In Count VII of the Amended Complaint, **McDonough** claims that, as a **New Jersey** member of a small employer health plan, she is also entitled to unpaid benefits on the basis that **Horizon** allegedly violated the **New Jersey** regulation which requires that "small employer carriers pay covered charges for medical services, using either the allowed charges or actual charges." *N.J.A.C.* § 11:21–7.13. (This is the same regulation raised by **Horizon** in its unavailing argument that no claim can lie against it based on its use of Ingenix because such conduct complied with **New Jersey** law.) **Horizon** raises a number of arguments for dismissal of this claim, including ERISA preemption. *See* 29 U.S.C. § 1144(a) (ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."). **McDonough** counters that the regulation is valid according to ERISA's savings clause, which in relevant part excepts from preemption all state laws relating to the regulation insurance. *See* 29 U.S.C. § 1144(b)(2)(A).

The Court, however, need not address the parties' preemption argument. Regardless of whether the regulation falls within ERISA's savings clause or not, it is clear that neither the statutory nor regulatory scheme governing Small Employer Health Plans authorize plan members to bring a private cause of action seeking redress for the violation claimed by **McDonough**. The only statutory provision **McDonough** raises in support of her right to sue is, to put it bluntly, completely inapplicable. The provision cited vests the Board of Directors of the **New Jersey** SEHP with the power to "sue and be sued, including taking any legal actions as may be necessary for recovery of any assessments due to the program or to avoid paying improper claims." *N.J.S.A.* 17B:27A–32(b). Without any legal authority whatsoever, **McDonough** asserts that the **New Jersey** legislature must have intended that eligible employees be empowered to enforce their rights under the regulation and its enabling statute in the event the Board declines to take action. The Supreme Court of **New Jersey** itself has observed, however, that "**New Jersey** courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*

*.*, 168 N.J. 255, 271, 773 A.2d 1132 (2001). It explained that to determine if an implied private right of action exists under a statute, courts consider whether:

> **\*9** (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy.

*Id.* at 272, 773 A.2d 1132. Here, not only does Plaintiff fail to cite to an express provision in the statute which would vest her, as an employee covered by a small employer health plan, with the right to sue, but she also fails to point to any evidence that the state legislature intended to establish a private right of action. This Court declines to infer a private right of action for individuals covered under the **New Jersey** statute which regulates small employer health benefits plans.

Accordingly, **McDonough's** claim to recover plan benefits as redress for **Horizon's** alleged violation of the SEHP Regulation will be dismissed for failure to state a claim upon which relief may be granted.

**G. Breach of Contract Claim**

Defendant moves to dismiss Plaintiff's claims insofar as they are brought on behalf of individuals who are or were insured under non-ERISA health plans, citing *Beye v.* **Horizon Blue Cross Blue Shield** *of N.J.,* 568 F.Supp.2d 556 (D.N.J.2008). In *Beye,* the court dismissed several state statutory and common law claims as preempted by ERISA. *Id.* at 570. Though **Horizon** has argued for the dismissal of Plaintiff's non-ERISA claims as a matter of standing, the Court construes the argument as also invoking the preemption doctrine.

ERISA preemption of state law causes of action is well-established. *See Aetna Health, Inc. v. Davila,* 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). The Supreme Court has held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* ERISA itself provides that the statute "supersede[s] any and all State laws insofar as they may now or hereafter relate to any

employee benefit plan." 29 U.S.C. § 1144(a).

The health benefits plan under which **McDonough's** rights exist is an employer-sponsored plan. Indeed, there is no dispute that her **Horizon** plan is governed by ERISA. **McDonough's** breach of contract claim would clearly "relate to" her employee benefit plan and is accordingly preempted under ERISA. *Id.; Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (dismissing the plaintiff's common law causes of action, including breach of contract claim, as preempted by ERISA, reasoning that they were based on the improper processing of a claim for benefits under an employee benefit plan).

**McDonough** might alternatively be understood to take the position that although she herself has no breach of contract claim, she has filed this suit as a putative class action and may therefore pursue the breach of contract claim on behalf of other **Horizon** insureds covered by non-ERISA plans. This position is unavailing because it fails to address **McDonough's** own standing to recover for a breach of contract injury.

**\*10** To establish Article III standing, a plaintiff must demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servcs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). It is axiomatic that a "plaintiff must demonstrate standing separately for each form of relief sought." *Id.* at 185 (2000); *see also Blum v. Yaretsky,* 457 U.S. 991, 999, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (holding, in a class action suit, that "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar"). This requirement applies with equal force in the class action context. *Lewis v. Casey,* 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The Supreme Court has repeatedly held as follows: "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon,* 426 U.S. at 40 n. 20 (quoting *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343,(1975)). As

set forth above, **McDonough** herself has no breach of contract injury and no breach of contract claim. She cannot base her standing to assert a breach of contract claim on injuries allegedly suffered by absent non-ERISA members of the putative class.

This case does not, moreover, fall under the exception recognized by the Supreme Court in *Ortiz,* in which the Court held that where class certification is "logically antecedent to Article III concerns," class certification should be decided before reaching the question of Article III standing. *Ortiz v. Fibreboard,* 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). *Ortiz,* unlike this case, dealt with the standing of proposed class members, that is, persons not yet parties to the case. *Id. Ortiz* does not obviate the well-established requirement that a named plaintiff must establish her own standing to sue, whether she proceeds individually or on behalf of a class. In other words, the class certification issue is not "logically antecedent" to standing concerns, as Article III standing concerns would exist regardless of whether **McDonough** brought this case to seek relief only for herself or brought it as a putative class action. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 612, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (stating that "logically antecedent" issues are those that would not exist but for the certification); *Rivera v. Wyeth–Ayerst Labs.,* 283 F.3d 315 (5th Cir.2002) (distinguishing situations in which *Ortiz* exception of deferring standing issues does not apply).

### H. McDonough's Standing To Assert Claims On Behalf of Others

**\*11** **Horizon** also moves that **McDonough's** claims be dismissed insofar as they are brought on behalf of individuals covered under large employer health plans, self-funded plans or nonERISA health plans because **McDonough** is insured under a small employer, fully-funded ERISA plan and therefore, according to **Horizon**, lacks standing to sue on behalf of those other individuals. This argument, however, is misplaced at this stage of the litigation. While **Horizon** presents this argument as a matter of standing, the issue raised actually goes to class certification requirements under Federal Rule of Civil Procedure 23. *See Lewis,* 518 U.S. at 395–96 (distinguishing between matters of standing and matters of class certification and noting that "[w]hether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.") (quoting 1 H. Newberg & A. Conte, Newberg on Class Actions § 2.07, pp. 2–40 to 2–41 (3d ed.1992).

McDonough v. Horizon Blue Cross Blue Shield of New..., Not Reported in...

52 Employee Benefits Cas. 1542

**Horizon** does not challenge **McDonough's** Article III standing or her own statutory standing to seek relief under ERISA. Rather, **Horizon's** "standing" argument maintains that she cannot seek relief on behalf of individuals whose **Horizon** health plans differ from her own. This argument raises concerns over whether the putative class presents common questions of law or fact and whether the **McDonough's** claims are "typical of the claims or defenses of the class," concerns governed by Federal Rule of Civil Procedure 23(a)(2) and (3), respectively. The question before the Court on this motion to dismiss is whether Plaintiff herself has set forth a plausible entitlement to the relief sought in Amended Complaint, not whether she may obtain such relief for others in a representative capacity. Thus, the Court will not decide on this Rule 12(b)(6) motion whether **McDonough** may prosecute her claims on behalf of other persons, covered under other plans.

**I. Jury Demand**

Finally, **Horizon** requests that the Court strike the Amended Complaint's jury demand because **McDonough's** ERISA claims are equitable in nature and thus do not entitle her to a trial by jury. **Horizon** is correct. The claims that survive this motion to dismiss arise under ERISA § 502(a)(1)(B), to recover unpaid benefits, and ERISA § 503(a)(3), for breach of the fiduciary duty of loyalty. The Third Circuit has held that there is no right to a jury trial in actions under ERISA § 502(a)(1)(B), reasoning that such actions are analogous to actions for breach of trust, which are equitable in nature. *See Eichorn v. AT & T Corp.,* 484 F.3d 644, 656 (3d Cir.2007) (citing *Cox v. Keystone Carbon Co.,* 894 F.2d 647, 649 (3d Cir.1990). It has also held that there is no right to a jury trial in an action brought under ERISA § 503(a)(3). *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 393 (3d Cir.1988). Accordingly, the Court will strike the jury demand from the Amended Complaint.

**III. CONCLUSION**

**\*12** For the foregoing reasons, the Court will grant in part and deny in part **Horizon's** motion to dismiss. As set forth above, Plaintiff may proceed on her ERISA § 502(a)(1)(B) claim for unpaid benefits and her ERISA § 502(a)(3) claim for breach of fiduciary duty based on **Horizon's** alleged handling of ONET claims to the detriment of plan members. The Amended Complaint's other claims will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). An appropriate form of Order will be filed herewith.

**Parallel Citations**

52 Employee Benefits Cas. 1542

   © 2014 Thomson Reuters. No claim to original U.S. Government Works.

 © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT E

Demaria v. Horizon Healthcare Services, Inc., Not Reported in F.Supp.2d (2012)

54 Employee Benefits Cas. 2014

2012 WL 5472116
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

Alphonse A. **DEMARIA**, D.C., T. Leonard Probe,
D.C. and James Proodian, D.C., on their own
behalf and on behalf of all others similarly
situated, Plaintiffs,
v.
**HORIZON HEALTHCARE** SERVICES, INC.
d/b/a **Horizon** Blue Cross Blue Shield of New
Jersey; and **Horizon Healthcare** of New Jersey,
Inc. d/b/a **Horizon** HMO, Defendants.

Civ. No. 2:11–cv–7298 (WJM). | Nov. 9, 2012.

**Attorneys and Law Firms**

John W. Leardi, Paul D. Werner, Vincent Norman
Buttaci, Buttaci & Leardi, LLC, Princeton, NJ, for
Plaintiffs.

James P. Flynn, Epstein, Becker & Green, PC, Newark,
NJ, for Defendants.

**Opinion**

**OPINION**

WILLIAM J. MARTINI, District Judge.

*\*1* Plaintiffs Alphonse A. **Demaria**, Leonard Probe and
James Proodian have brought this putative class action on
behalf of themselves and all other similarly-situated
chiropractic physicians. This matter comes before the
Court on Defendants' motion to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6) for failure to
state a claim upon which relief may be granted. For the
reasons set forth below, Defendants' motion is
**GRANTED.**

**I. BACKGROUND**[1]
Defendants **Horizon Healthcare** Services, Inc. and
**Horizon Healthcare** of New Jersey, Inc. (collectively
"**Horizon**") underwrite and/or administer the health
insurance benefits of more than 3.6 million persons in
New Jersey ("Plan Participants") through various

employer-sponsored, individual and governmental health
insurance coverage plans ("Plans"). Through these Plans,
**Horizon** provides reimbursement for certain health care
services rendered to Plan Participants ("Covered
Services"), subject to the terms set forth in each
individual Plan. Many of these Plans are governed by
ERISA. Other plans are ERISA-exempt.

Plaintiffs are chiropractors who would regularly provide
four types of chiropractic treatments to Plan Participants.
Namely: (1) evaluation and management services
("E/M"); (2) chiropractic manipulative therapy ("CMT");
(3) passive adjunctive modalities ("passive modalities");
and (4) active therapeutic procedures ("active therapies").
In the course of providing those services to Plan
Participants, all three Plaintiffs assert that "as a matter of
course," they would obtain written assignments
("Assignments") from Plan Participants which entitled
Plaintiffs to any claims for reimbursement which would
otherwise be payable to the Plan Participants. (Compl.¶
9.) Pursuant to these Assignments, the Plan Participants
also remained personally liable to Plaintiffs for any
non-Covered Services. (*Id.*) Plaintiffs, however, have not
provided copies of any of these purported Assignments,
nor have they set forth the exact language contained in
these writings.

Plaintiffs would thereafter seek reimbursement from
**Horizon** for those services.[2] Plaintiffs allege that from at
least March 2004 until April 15, 2010, **Horizon**
systemically and improperly denied their insurance
benefit claims for E/M services, passive modalities, and
active therapies, and only provided benefits for the CMT
services. **Horizon's** proffered reasons for denying those
reimbursement claims included, among others:

"THIS PROVIDER WAS NOT CERTIFIED/ELIGIBLE
TO BE PAID FOR THIS PROCEDURE/SERVICE ON
THIS DATE OF SERVICE"; "B 106 THIS SERVICE IS
NOT A COVERED BENEFIT WHEN BILLED BY
THIS TYPE OF PROVIDER"; "F027 PROVIDER
TYPE/SPECIALTY CANNOT PERFORM THIS TYPE
OF SERVICE"; "52 THE
REFERRING/PRESCRIBING/RENDERING
PROVIDER IS NOT ELIGIBLE TO REFER/
PRESCRIBE/ORDER/PERFORM THE SERVICE
BILLED"; "97 PAYMENT IS INCLUDED IN THE
ALLOWANCE FOR ANOTHER
SERVICE/PROCEDURE"; "X800 REIMBURSEMENT
FOR THESE SERVICES IS INCLUDED IN THE
REIMBURSEMENT FOR THE CHIROPRACTIC
MANIPULATIVE TREATMENT." (*Id.* ¶ 92.)

54 Employee Benefits Cas. 2014

**\*2 Horizon** later took the position that it "bundled" reimbursement for all four services into a "global fee" for CMT. And on October 7, 2009, the New Jersey Department of Banking and Insurance ("DOBI") held that **Horizon's** bundling practices violated New Jersey's Unfair Claim Settlement Practices Act, N.J.S.A. § 17B:30–13 .1. The DOBI therefore ordered **Horizon** to begin "to individually evaluate whether E/M [services, passive modalities, and active therapies] billed by chiropractors are significantly separable from CMT or other services provided by chiropractors." (*Id.* ¶ 15.) Plaintiffs concede that **Horizon** was in compliance with the DOBI's order by April 15, 2010, but nonetheless now seek relief from **Horizon** for its past pattern of improperly processing reimbursement claims for chiropractic treatments.

On December 16, 2011, Plaintiffs commenced this action in district court. Counts One and Two of the Complaint allege violations of § 502(a) of the Employment Retirement Security Income Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). The Court has original jurisdiction over claims arising under ERISA. 29 U.S.C. § 1132(e); *Metropolitan Life Ins. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The remaining counts in the Complaint allege various violations of New Jersey state law, over which Plaintiffs assert that the Court should exercise supplemental jurisdiction. (Compl. ¶ 23 (citing 28 U.S.C. § 1367).)

Presently, **Horizon** moves for dismissal of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting, among other things, that the Court should dismiss Counts One and Two because Plaintiffs have not demonstrated that they have standing to assert claims against **Horizon** for its alleged § 502(a) ERISA violations.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the Complaint as true and viewing them in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs' claims have facial plausibility. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). This means that the Complaint contains sufficient factual allegations to raise a right to relief above the speculative level. *Id.* at 1965; *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008). *See also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Presently, **Horizon** moves for dismissal of Counts One and Two pursuant to Rule 12(b)(6) because the Assignments alleged by Plaintiffs do not demonstrate statutory standing for Plaintiffs to assert their ERISA claims.[3] And when, as here, standing is challenged on a motion to dismiss, the burden falls on the proponent of the claim to establish that it has standing to sue. *See Franco v. Connecticut General Life Ins. Co.,* 818 F.Supp.2d 792, 810–811 (D.N.J.2011) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Thus, here, the burden falls on Plaintiffs to establish that they have standing to sue under ERISA § 502(a).

## III. DISCUSSION

### a. ERISA Standing
**\*3** Under § 502(a) of ERISA:

(a) ... A civil action may be brought—

(1) by a participant or beneficiary ...

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan [or]; ...

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ...

29 U.S.C. §§ 1132(a).

Thus, Plaintiffs will only have standing to sue under ERISA § 502(a) if their Complaint sets forth sufficient facts demonstrating that they are Plan "participants" or "beneficiaries." Those terms, generally, refer to individuals entitled to receive benefits under an employee benefit plan, and not to the **healthcare** providers who treat those individuals. *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 399–400 (3d Cir.2004). And in spite of this general rule, Plaintiffs assert that the Assignments they received from Plan Participants are nonetheless sufficient to confer ERISA standing. Although the Third Circuit has not definitively ruled on whether a **healthcare** provider

Demaria v. Horizon Healthcare Services, Inc., Not Reported in F.Supp.2d (2012)

54 Employee Benefits Cas. 2014

may obtain ERISA § 502(a) standing through an assignment, many other circuit courts have expressly held that providers may have standing to assert an ERISA § 502(a) claim "where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan." *Id.* at 401 n. 7.

In *Franco v. Connecticut General Life Ins. Co.,* 818 F.Supp.2d 792 (D.N.J.2011), Judge Chesler reviewed recent District of New Jersey cases that have considered precisely what a **healthcare** provider must present to the court to establish that an assignment has conferred him with statutory standing to assert a § 502(a) ERISA claim. Those cases include: *North Jersey Ctr. for Surgery v.* **Horizon** *BCBS of New Jersey Inc.,* No. 07–4812, 2008 WL 4371754 (D.N.J. Sept.18, 2008) (vague references to a purported assignment failed to establish that there was a complete assignment of health insurance benefits for purposes of ERISA § 502(a) standing because the court must be satisfied that the alleged assignment encompasses the plan participants' rights to receive the full benefits of their plan (within the scope of ERISA), and not simply the right to reimbursement of medical expenses (beyond the scope of ERISA)); *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health and Benefits Plan,* No. 05–5941, 2007 WL 2793372, at *3 (D.N.J. Sept.25, 2007) (no ERISA jurisdiction where applicable assignment's language allowed the provider hospital to receive payments directly from the patient's health benefits insurer but did not support an 'unequivocal assignment of all of [the patient's] rights under [the ERISA] plan"); *Cmty. Med. Ctr. V. Local 464A UFCW Welfare Reimbursement Fund,* 143 Fed.Appx. 433, at 435 (3d Cir.2005) (observing in dicta that a court could not be satisfied that a provider has standing to pursue a claim under ERISA § 502(a) as an assignee without knowing the term or parameters of the purported assignments).

*4 In short, and as demonstrated in *Franco,* the scope of the "assignment of benefits" is critical to determining whether a provider has standing to sue under ERISA. *Franco* at 809 (2011). Thus, presently, Plaintiffs will meet their burden of establishing ERISA standing if their Complaint contains specific factual allegations to render plausible their claim that the Assignments they received from the Plan Participants conferred them with the right to receive the full benefits of that Plan. *Id.* However, vague references to a common practice and purported assignment will not satisfy this burden, in which case, dismissal of Counts One and Two will be proper.

**b. For Substantially the Same Reasons Set Forth in** *Franco v. Connecticut General Life Insurance*

*Company,* **the Court Will Dismiss Counts One and Two**

In *Franco,* a group of **healthcare** providers who treated persons insured under Defendant CIGNA's **healthcare** plans ("Provider Plaintiffs") filed a putative class action in district court against CIGNA for its systematic underpayment for those services. The Provider Plaintiffs alleged that they would obtain assignments from patients which authorized them to receive reimbursement directly from CIGNA for services rendered, but which also allowed the Provider Plaintiffs to balance bill the patient for any amount disallowed by CIGNA.[5] *Id.* at 805. The Provider Plaintiffs further alleged that CIGNA improperly reimbursed them for **healthcare** services rendered. In response, CIGNA filed a motion to dismiss Plaintiff Providers' complaint for failure to state a claim. As part of that motion, CIGNA challenged the statutory standing of the Provider Plaintiffs to assert ERISA claims.

In ruling that dismissal of the Provider Plaintiff's ERISA claims for lack of standing was proper, the *Franco* Court noted that the Provider Plaintiffs' pleading "provide[d] only the most conclusory assertions that various Provider Plaintiffs obtained an assignment of 'benefits' from their patients." *Id.* at 810. ("Simply asserting that CIGNA subscribers have assigned their CIGNA plan benefits fails to plausibly establish that each Provider Plaintiff has obtained at least one actual assignment of a patient's right to assert a claim for benefits and pursue litigation under ERISA. Provider Plaintiffs ... fail to plead facts (for example, actual assignment language) to support their legal conclusion that a valid assignment of the proper breadth was given by patients." *Id.*

Similarly, in the current matter, Plaintiffs, who seek to represent a class of similarly situated **healthcare** providers, vaguely assert that they obtained Assignments from Plan Participants which entitle them to any claims for reimbursement which would otherwise be payable to the Plan Participants under the terms of each Plan. Moreover, pursuant to these Assignments, the Plan Participants remained personally liable to Plaintiffs for any non-Covered Services. On these facts, and as was the case in *Franco,* the Court finds that: "At best, the allegations provide only the most ambiguous and conclusory information about what the purported assignments entail. At worst for [Plaintiffs], they indicate that the assignments were limited to a patient's assigning his or her right to receive reimbursement from [**Horizon**] for the covered portion of the service bill, which in no way can be construed as tantamount to assigning the right enforce his or her rights under the plan. The Court cannot conclude, based on the information supplied in the Complaint [ ], that the assignments encompass a [Plan

Demaria v. Horizon Healthcare Services, Inc., Not Reported in F.Supp.2d (2012)

54 Employee Benefits Cas. 2014

Participant's] claim to benefits, such that any of the [Plaintiffs] can legally be deemed a 'participant or beneficiary' of his or her patient's ERISA health plan. Simply put, [Plaintiffs] have not met their burden of demonstrating that they have derivative standing to sue under ERISA." *Id.* at 811–12.

**\*5** Accordingly, the Court will **GRANT Horizon's** motion to dismiss Counts One and Two of the Complaint based on Plaintiffs' failure to demonstrate standing to bring claims under § 502(a) of ERISA. At this time, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3) ("the district court[ ] may decline to exercise supplemental jurisdiction [if] the district court has dismissed all claims over which it has original jurisdiction."); *Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec., Inc.,* 823 F.Supp. 1191, 1193 (E.D.Pa.1993) (declining to exercise

supplemental jurisdiction over state law claims where ERISA claims dismissed on 12(b)(6) motion). Accordingly, the Court will dismiss this matter in its entirety, without prejudice.

**IV. CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is **GRANTED**, and this matter is dismissed without prejudice. An appropriate order follows.

**Parallel Citations**

54 Employee Benefits Cas. 2014

Footnotes

1       The following assumes the facts in Plaintiffs' Complaint as true.

2       Plaintiff **DeMaria** was a **Horizon** "Participating Provider," meaning that when he treated Plan Participants in certain—and heretofore unspecified—**Horizon** Plans, he agreed to accept payments directly from **Horizon** for Covered Services as payment in full. Plaintiffs Proodian and Probe were "Non–Participating Providers" who, under at least some of the Plans, were entitled to be reimbursed by **Horizon**, but also retained the right to "balance bill" Plan Participants for the difference between their submitted charges and any reimbursement paid to them by **Horizon** for Covered Services.

3       The Court reviews a motion to dismiss for lack of statutory standing under Federal Rule of Civil Procedure 12(b)(6). *Franco v. Connecticut General Life Ins. Co.,* 818 F.Supp.2d 792, 809 (2011) (distinguishing Rule 12(b)(6) dismissal for failure to meet statutory prerequisites to bring suit from Rule 12(b)(1) dismissal for lack of injury in fact) (*citing Maio v. Aetna, Inc.,* 221 F.3d 472, 482 n. 7 (3d Cir.2000).

4       Although § 1132(a)(3) also confers standing on "fiduciaries," for purposes of this motion, Plaintiffs' only colorable basis for § 502(a) ERISA standing is as "participants" or "beneficiaries." *See* 29 U.S.C. § 1002(21)(A) (defining "fiduciary").

5       In *Franco,* the only Provider Plaintiffs who received assignments and the right to balance bill were NonParticipating Providers. The Court wishes to make clear that in this action, the Complaint alleges that all three Plaintiffs received assignments and the right to balance bill for, at the very least, non-Covered Services, and that as alleged, **Horizon** improperly and systematically denied reimbursement for E/M services, passive modalities, and active therapies, because, among other reasons, they were non-Covered Services. In other words, as a practical matter, Plaintiffs allege that **Horizon** both implicitly and, at times, explicitly, denied reimbursement for these three treatments as non-Covered Services. Thus, although Plaintiff **DeMaria** was a Participating Provider who was precluded from billing Plan Participants above their negotiated rate for Covered Services, for at least some of the Plans, he could also balance bill for non-Covered Services. Accordingly, for purposes of this motion, as currently pled, Plaintiffs have failed to make any meaningful distinction between the Participating and Non–Participating Provider Plaintiffs.

          © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Demaria v. Horizon Healthcare Services, Inc., Not Reported in F.Supp.2d (2012)

54 Employee Benefits Cas. 2014